## In Re Anonymous No. 35 D.B. 85

Disciplinary Board Docket no. 35 D.B. 85.

To The Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

BROWN, *Member*, September 17, 1986—Pursuant to Rule 208(d)(2)(iii), Pa.R.D.E., the Disciplinary Board of the Supreme Court of Pennsylvania submits the following report on the above-captioned matter.

## I. HISTORY OF PROCEEDINGS

This matter comes before the board on cross-exceptions filed to the recommendation of hearing committee [ ] that respondent suffer suspension from the practice of law for a period of six months, with reinstatement conditioned upon his submitting periodic certified audits of his business and trust accounts to the Disciplinary Board. Further, in the event the audits are not submitted as required, "suspension shall, without hearing, be reimposed for an additional period of six months. Upon completion of the five-year period with full compliance,

the requirement shall end." See report of hearing committee [ ], at 13.

The recommended discipline is a consequence of respondent's systematic commingling of trust funds and his indisputable failure to maintain the integrity of his trust accounts.

Respondent, thereafter, requested and was granted oral argument before a panel of this board. The panel consisted of members McGinley, Tumolo and the undersigned. Argument was held at the board's [ ] office on April 8, 1986. The primary issue advanced at oral argument related to the nature and extent of the discipline to be imposed.

## II. STATEMENT OF FACTS

The genesis of this matter is traceable to respondent's failure to properly handle funds entrusted to him which belonged to the estate of [A], deceased.

[A] died testate in 1974. Decedent's widow and one of his heirs, [B], died testate on April 7, 1980. Both wills were submitted for probate on August 25, 1980. Respondent was appointed as executor of the estate of [A], deceased, and letters testamentary on the estate of [B], deceased, were issued to her daughter, [C], the ultimate complainant in this matter. Respondent was retained as attorney for both estates.

On October 2, 1980, respondent, as executor of the estate of [A], sold estate property for the sum of $43,000. With a portion of the sale proceeds, respondent purchased a $30,000, six-month certificate of deposit and deposited the remainder in his trust account. He, thereafter, filed inventories in these related estates indicating that the estate's assets constituted the net sale proceeds. Respondent

delayed, however, in arranging for the prompt payment of inheritance tax and settlement of the estate proceedings. This triggered an inquiry from [C], heir and co-executor of the related estate of [B]. Respondent's reply to her legitimate inquiry was inaccurate. After many inquiries, respondent reimbursed [C] the sum of $3,193.08 for money she had expended for the funeral of [A]. The reimbursement check was issued from respondent's trust account on December 7, 1983, over three years after his receipt of the proceeds of the sale of the estate's real property. Eventually, [C] filed a complaint charging that respondent mishandled these estates.

Petitioner, through a DB-7 letter of allegations dated July 20, 1984, advised respondent of [C]'s charges and requested that he provide bank records or other account records to establish that the [A] estate funds had been held inviolate. Respondent failed to voluntarily supply the requested information and an investigatory hearing was convened on November 1, 1984, at which time respondent supplied the subpoenaed records. It was evident that the [A] estate funds had not been maintained inviolate. Respondent conceded his negligence and attempted to explain the incident as isolated.

Petitioner, thereafter, conducted an audit of randomly-selected client accounts for funds entrusted to respondent by various clients between 1980 and 1984. The audit findings formed the predicate of the within complaint and are basically distilled into the findings of hearing committee [   ] which noted (1) that respondent cooperated, (2) that he had practiced law 23 years with no prior charges, (3) that he voluntarily mortgaged his home to replenish his trust fund, and (4) that there was no known loss to respondent's clients. The hearing committee rejected respondent's suggestion that private discipline

was appropriate in this matter and considered the character, extent, pervasiveness and continuity of respondent's conduct in light of the teaching of Office of Disciplinary Counsel v. Lucarini, 504 Pa. Super. 271, 472 A.2d 186 (1983), as mandating that the choice of discipline fell between suspension and disbarment. The hearing committee noted further that respondent did not realize and appreciate the extent of his trust accounting lapses.

The basic facts of the case are not in dispute and neither party excepted to the hearing committee's basic findings of fact, which, in addition to his dealings with the [A] estate, are summarized as follows:

During the period covered by Disciplinary Counsel's investigation, respondent:

". . . maintained two separate trust accounts, one used for the period October 1980 through June 1982, and the other for the period January 1982 through September 1, 1984.

". . . For the period from October 1, 1980, through September 1, 1984, respondent's trust accounts were . . . almost continuously out of trust, and were continuously out of trust for the period from June, 1982, through September 1, 1984. The amounts by which the trust accounts were out of trust ranged from a low amount of approximately $2,000 to a high amount of $40,000. . . .

". . . Respondent, for a period commencing prior to 1980 and continuing at least through the first three months of 1984, was in the habit of writing checks for his own business, personal and family purposes out of the trust account and of depositing personal funds thereto. Respondent did not, over said period, maintain an accounting system which would permit him to determine if the bank balance was sufficient to cover all of the clients' trust funds entrusted to him.

". . . Respondent, in April of 1982, became aware that his trust account was "out of trust," but the exact amount of the deficiency was not determined.

". . . In July of 1982, and without having instituted any corrective bookkeeping practices, respondent deposited over $36,000, the proceeds of the [A] estate certificate, in his trust account.

". . . After said deposit, respondent continued his practice of using the trust account for his own business, personal and family expenditures, and continued out of trust.

". . . On August 15, 1984, respondent deposited personal funds in the trust account, in the amount of $53,316.00. This deposit was made shortly prior to the time of the investigatory hearing of petitioner and more than covered all trust account deficiencies. . . .

". . . In December of 1983, respondent retained an accountant to help him establish an accounting system which would enable him to obtain a complete and up-to-date accounting for all trust funds and to reconcile it with the bank account balance. Respondent's testimony indicates he also knew at this time that his trust account did not have funds sufficient to cover all client accounts.

". . . No other charges have been filed against respondent with the Disciplinary Board, nor have any civil or criminal actions ever been commenced against respondent on account of his practice of the law.

". . . Respondent is employed full time as a lawyer, has no other source of income, and has a family consisting of a wife, and three children dependent upon him for support and education." See report of hearing committee [  ], at 6-8.

The hearing committee also made the following undisputed determinations relating to respondents'

conduct in relationship to The Disciplinary Rules:

"1. Disciplinary Rule 1-102(A)(4) has been violated. Respondent in his statements to his client, [C], represented that the estate funds were held in his trust account. Further by his accepting the oath of office, he vowed to conduct himself with propriety in accord with the Disciplinary Rules and thus to maintain his trust funds inviolate. These representations have not been true and thus there has been a violation of this rule.

"2. There is no violation of Disciplinary Rule 1-102(A)(5) dealing with conduct prejudicial to the administration of justice.

"3. Disciplinary Rule 1-102(A)(6) has been violated because the conduct displayed does adversely reflect upon his fitness to practice law.

"4. There is no violation of Disciplinary Rule 6-101(A)(3) dealing with neglect of a legal matter entrusted to respondent.

"5. Disciplinary Rule 7-101(A)(3) dealing with conduct intentionally prejudicial or damaging to clients, has been violated by respondent's knowing use of client's funds without their prior informed consent.

"6. Disciplinary Rule 9-102(A) dealing with proper maintenance and use of a trust account has been violated.

"7. The committee finds no violation of Disciplinary Rule 9-102(B)(1) dealing with failure to promptly notify a client of receipt of the client's funds.

"8. Respondent has violated Disciplinary Rule 9-102(B)(3) dealing with failure to maintain complete and accurate records of clients' funds.

"9. The committee finds a violation of Disciplinary Rule 9-102(B)(4) dealing with failure to promptly pay or deliver to a client, upon request,

funds belonging to the client." See report of hearing committee [   ], at 10-11.

## III. DISCUSSION:

It was clear to each member of the reviewing committee that respondent is acutely aware of the gravity of his situation and that he has taken appropriate action to avoid repetition of this type of situation. Coupling these facts with the fact that respondent, a sole practitioner, has practiced law for nearly a quarter of a century with no prior history of discipline, the reviewing members, and subsequently the board, concluded that a six-month suspension, as recommended by the hearing committee, is excessive, as its consequences are basically tantamount to disbarment and would be devastating to respondent and his family, with no concomitant protection being afforded the public and respondent's clients. However, as noted above, the nature of the offenses is too egregious to warrant private sanctions.

## IV. RECOMMENDATIONS:

Therefore, the board recommends that respondent be suspended from the practice of law for a period of three months and that reinstatement be conditioned upon respondent securing and submitting to the Office of Disciplinary Counsel an audit of his books and trust accounts by a certified public accountant and, further, that respondent pay the costs associated with these proceedings.

Mr. Mundy dissented and would recommend a public censure. Ms. Heh did not participate in the adjudication.

468

## ORDER

NIX, *C.J.*, And now, this November 10, 1986, upon consideration of the report and recommendation of the Disciplinary Board dated September 17, 1986, and the petition for review filed by the Office of Disciplinary Counsel, the petition for review is denied and it is ordered that [respondent] be and he is suspended from the Bar of the Commonwealth for a period of six months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen dissents and would issue a rule to show cause why respondent should not be disbarred.

Mr. Justice Papadakos dissents and would impose public censure.