## In re Anonymous No. 67 D.B. 81

Disciplinary Board Docket no. 67 D.B. 81.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

KELLER, *Member,* August 21, 1991—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary

Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

The petitioner, [ ], was disbarred by Supreme Court order dated July 1, 1983, for reasons set forth in *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983).

The misconduct which led to petitioner's disbarment included mismanagement, commingling and conversion of client funds; failure to maintain adequate escrow funds; failure to notify clients of the receipt of their funds, or account for these monies; and the making of intentional misrepresentations to both clients and Disciplinary Counsel concerning his actions as counsel.

On August 25, 1988, a petition for reinstatement was filed.

Hearings on the matter were held before Hearing Committee [ ], chaired by [ ], on December 5 and 20, 1988, and March 11, 1989. On October 16, 1989, Hearing Committee [ ] filed its report, and recommended that reinstatement be granted.

On November 1, 1989, the Office of Disciplinary Counsel filed a brief on exceptions to the Hearing Committee report, and requested that the petition for reinstatement be denied.

On November 17, 1989, petitioner filed a brief in opposition to Office of Disciplinary Counsel's exceptions to the recommendation of Hearing Committee [ ].

The matter was adjudicated at the December 1989 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania. On December 14, 1989, the Disciplinary Board remanded the matter to Hearing Committee [ ] for consideration whether petitioner's immediate reinstatement would further offend and subvert public interest. The Disciplinary Board also sought clarification of petitioner's disclosures concerning his post-disbarment activities and sources of income.

On April 9, 1990, Hearing Committee [ ] filed a report in response to the Disciplinary Board's remand of the matter. Once again, the Hearing Committee unanimously recommended that petitioner be reinstated to the practice of law.

On April 27, 1990, the Office of Disciplinary Counsel filed a brief on exceptions to the Hearing Committee report and recommendation on remand, and requested that petitioner be denied reinstatement.

On May 18, 1990, petitioner filed a brief in opposition to Office of Disciplinary Counsel's exceptions to the Hearing Committee report and recommendation on remand.

The matter was adjudicated at the May 1990 and September 1990 meetings of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

(1) Petitioner was born in 1936 and admitted to the Pennsylvania bar in 1962. He is a graduate of [ ] University and the University of [ ] School of Law.

(2) From the time of his 1962 admission until his July 1983 disbarment, petitioner was a sole practitioner in [A].

(3) During the period of 1978-1980, petitioner repeatedly commingled client funds with his own and diverted client funds to satisfy outstanding obligations to other clients.

(4) He also converted client monies and failed to properly maintain escrow accounts.

(5) Petitioner also placed client signatures on an insurance release form without the clients' knowledge or consent, failed to notify clients of receipt of their funds, or provide a prompt accounting.

(6) Additionally, petitioner made intentional misrepresentations to the Office of Disciplinary Counsel concerning his handling of clients' affairs.

(7) Petitioner admitted that his aforementioned conduct violated the following Disciplinary Rules:

(a) D.R. 1-102(A)(4)—a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(b) D.R. 1-102(A)(6)—a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(c) D.R. 9-102(A)—all funds of clients paid to a lawyer shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer shall be deposited therein;

(d) D.R. 9-102(B)(1)—a lawyer shall promptly notify a client of the receipt of his funds, securities or other properties;

(e) D.R. 9-102(B)(3)—a lawyer shall maintain complete records of all funds, securities, and other properties of client coming into the possession of the lawyer and render appropriate accounting to his client regarding them; and

(f) D.R. 9-102(B)(4)—a lawyer shall promptly pay or deliver to the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

(8) Petitioner has reimbursed all of his former clients.

(9) During the period of misconduct, petitioner was suffering from alcoholism.

(10) Petitioner began recovery from alcoholism in 1979. He does not drink alcohol, has sought professional counseling to help him overcome his problems, and attends Alcoholics Anonymous meetings.

(11) Since his disbarment, petitioner has been self-employed as a "consultant/legal assistant" for various personal injury attorneys in [A].

(12) Petitioner's services for these attorneys specifically include the conducting of accident and injury investigations, drafting of pleadings, preparation of complaints, assembly of documents and files for trial, and legal research.

(13) In 1984, petitioner and his family formed [B], a corporation which furnishes the aforementioned services to [A] attorneys.

(14) Fees from consulting and [B] were petitioner's sole source of income during the period of his disbarment.

(15) Although petitioner was hired by various [A] attorneys during the period of his disbarment, the scope of his employment was limited to the provision of services which would assist others in their practice of law, and in no way constituted an unauthorized practice of law by petitioner.

(16) Petitioner has submitted voluminous fiscal records concerning his personal and corporate-fiscal dealings during the time of his disbarment.

(17)   Petitioner and his wife are the objects of an Internal Revenue Service tax lien in excess of $200,000. He has, however, undertaken the payment of his delinquent tax obligations.

(18)   Petitioner read the *Pennsylvania Reports* advance sheets on a weekly basis, American Trial Lawyers Association publications, and case reviews in the *Legal Intelligencer* during the period of his disbarment.

(19)   Petitioner attended the Pennsylvania Bar Institute at [   ] Law School on August 10-14, 1988.

(20)   Several [A] attorneys, including a lawyer from the District Attorney's Office, testified before the Hearing Committee that petitioner's reinstatement would not pose a threat to the interests of the bar or the public.

## CONCLUSIONS OF LAW

(1)   The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2)   Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3)   Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar, nor subversive of the interests of the public.

## DISCUSSION

The sole issue before the Disciplinary Board is whether petitioner's request for readmission to the Pennsylvania bar should be granted.   The inquiry into

petitioner's fitness for reinstatement is a two-step process.

First, the Disciplinary Board must determine whether the conduct for which petitioner was disbarred is so egregious as to preclude his reinstatement at this point in time. Such an inquiry demands an analysis of whether a sufficient length of time has evolved since the acts of misconduct occurred during which the petitioner has engaged in a qualitative period of rehabilitation. See *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). Assuming petitioner's misconduct will not prevent consideration of his current request for reinstatement, the next question is whether petitioner possesses the moral qualifications and learning in the law necessary to merit readmission to the Pennsylvania bar. See Rule 203, Pa.R.D.E. It is petitioner's burden to prove, by clear and convincing evidence, that he has the moral qualifications and learning in the law necessary to resume practice in the Commonwealth of Pennsylvania, and that his resumption of practice will not be detrimental to the integrity of the bar, nor subversive of the interests of the public. See Rule 218(c)(3)(i), Pa.R.D.E.

The threshold issue to be addressed, when a disbarred attorney seeks reinstatement, is whether the misconduct which led to disbarment is so egregious as to preclude reinstatement. When considering a petition for reinstatement, "a review of the underlying offense is required as an initial step in determining eligibility for readmission." *Office of Disciplinary Counsel v. [E],* 4 D.B. 76 at 4. The [D] case stands for the proposition that there are certain acts of misconduct so offensive to the integrity of the bar and subversive of public

interest that no amount of time or rehabilitation can cure the injustice the petitioner's reinstatement would cause.

The issue in the instant matter is, therefore, whether petitioner's commingling, conversion and mishandling of client funds and subsequent misrepresentations to clients and the Office of Disciplinary Counsel are so egregious in their very nature that they preclude any consideration of reinstatement. An examination of Pennsylvania case law demonstrates that petitioner's misconduct is not so repugnant to the integrity of the bar or public interest as to obviate his possible reinstatement. See *Office of Disciplinary Counsel v. [F]*, 26 D.B. 81, 7 D.&C.4th 260 (1990) (attorney disbarred for delivery of bribe to a public official, giving false testimony under oath after a grant of immunity, failing to make appropriate disclosure to a federal grand jury and law enforcement officers, and "laundering" checks for a public official subsequently reinstated); *In re [C]*, 49 D.&C.3d 298 (1988) (attorney reinstated after numerous convictions for making material untrue statements to the Office of Housing and Urban Development, fraudulent lot sales and mail fraud); *Office of Disciplinary Counsel v. [D]*, Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989) (attorney who unsatisfactorily handled client affairs and voluntarily withdrew from the bar and later readmitted).

Having determined that petitioner's misconduct was not so egregious as to permanently avert his reinstatement to the Pennsylvania bar, the next query is whether a quantitative period during which petitioner has engaged in qualitative rehabilitation has elapsed since his 1983 disbarment, so as to make his readmission request timely. See *Office of Disciplinary Counsel v. Keller,*

509 Pa. 573, 506 A.2d 872 (1986); *Office of Disciplinary Counsel v. [D],* Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989).

Petitioner has been removed from the practice of law for over seven years. A sampling of other Pennsylvania reinstatement cases, while not a mandate for the ideal duration of a disbarment, illustrate that the length of disbarment is subjective and based upon the petitioner's rehabilitation. See *Office of Disciplinary Counsel v. [F],* 26 D.B. 81, 7 D.&C.4th 260 (1990) (attorney reinstated after 12 years, during which he earned a Masters of Business Administration degree from the University of [ ], and served as chairman of the [ ] Savings Association); *Office of Disciplinary Counsel v. [D],* Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989) (first step in attorney's rehabilitation was his admission of wrongdoing); *In re [C],* 49 D.&C.3d 298 (1986) (rehabilitation occurred during attorney's incarceration).

In the instant matter, petitioner's seven year absence from the bar included a period of qualitative rehabilitation during which he sought treatment for the alcoholism, which led to his misconduct. He also accepted responsibility for his enormous financial obligations, executing an insurance policy benefiting the Internal Revenue Service and making payment on past-due debts.

Financial improprieties lay at the heart of petitioner's misconduct. During the period of his disbarment he has, however, managed to overcome his fiscal ineptitude. Petitioner established and administered a profitable legal assistance service, [B], and has implemented an accounting system to help him manage his business' funds. This successful venture, as well as petitioner's admission of wrongdoing, and his acceptance of his

responsibility to fulfill his financial obligations and continue recovery from his alcoholism, all evince the qualitative period of rehabilitation petitioner has participated in since his disbarment.

Having determined that petitioner engaged in a meaningful, lengthy effort to rehabilitate himself, we conclude that his present reinstatement would not pose a threat to the integrity of the bar or interest of the public. See *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986); *In re [C],* 49 D.&C.3d 298 (1986); and Rule 218(c)(3)(i), Pa.R.D.E. This conclusion is buttressed by the testimony of several [A] attorneys, including a member of the District Attorney's Office.

The next point of inquiry is whether petitioner possesses the moral character necessary to resume the practice of law in the Commonwealth of Pennsylvania, and required by Rule 218(c)(3)(i), Pa.R.D.E. The petitioner in the *[B]* case bore the burden of proving his moral fitness through the presentation of testimony by numerous attorneys of his high statute. *Office of Disciplinary Counsel v.[D],* Nos. 4 and 35 D.B. 79, 5 D.&C. 557 (1989). The petitioner in *[C]* presented similar attestation to his moral integrity as part of his successful bid for reinstatement. *In re [C],* 49 D.&C.3d 298 (1986).

Petitioner has presented similar favorable character testimony from various members of the bar, and has amply demonstrated his wholehearted commitment to rehabilitation. It must be noted that the Office of Disciplinary Counsel has objected to petitioner's reinstatement on the grounds he is morally unfit to practice law in Pennsylvania. The gravamen of Office of Disciplinary Counsel's objection is that petitioner failed to adequately explain the sources and amounts of his

income during the period of his disbarment, or provide complete income tax returns. This argument is belied by the extensive and voluminous financial records submitted by petitioner, including both personal and corporate tax returns for the time in question. An examination of these records shows that petitioner has not misrepresented or withheld pertinent information about the sources or amounts of his post-disbarment income. We therefore conclude petitioner has met his burden of proving he has the moral qualifications required to practice law in the Commonwealth of Pennsylvania.

In addition to the requisite moral standards mandatory for reinstatement, the petitioner must also possess learning in the law. (Rule 218(c)(3)(i), Pa.R.D.E.) Petitioner presented non-controverted evidence that during the period of his disbarment he has kept abreast of the law through his performance of legal research and reading of *Pennsylvania Reporter* advance sheets, American Trial Lawyers Association publications, and *Legal Intelligencer* case reviews. He also attended the Pennsylvania Bar Institute at [ ] Law School on August 10-14, 1988. Petitioner has therefore, maintained the requisite learning in the law.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Messrs. Eckell, Hill and Ms. Lieber dissent.

Ms. Heh did not participate in the adjudication.

## DISSENT

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

ECKELL, *Member*—The undersigned respectfully dissents from the report and recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania.

It is certainly accurate to state that in any reinstatement proceedings, the initial inquiry must be an analysis of the *Keller*[1] threshold. It is important to note that *Keller* itself was not a reinstatement case. It was a case analyzing what discipline to impose upon the respondent Keller. Keller was urging a suspension rather than disbarment. The *Keller* court deemed it appropriate to distinguish between the sanction of suspension and that of disbarment. Therefore, although the test for reinstatement following disbarment was enunciated in *Keller*, we must examine the cases following *Keller* which actually considered reinstatement of disbarred lawyers.

Initially, a statement of the *Keller* threshold is appropriate. In a unanimous opinion, *Keller*, 509 Pa. 573, 506 A.2d at 875, the Supreme Court stated:

"When reinstatement is sought by the disbarred attorney, the threshold question must be whether the magnitude of the breach of trust would permit the resumption of practice with a detrimental effect upon the 'integrity and standing of the bar or the administration of justice nor subversive of the public interest.'"

---

1. *Office of Disciplinary Counsel v. John J. Keller*, 509 Pa. 573, 506 A.2d 872 (1986).

This language compels the board to first focus on the impact of the disbarred lawyer's misconduct upon the judicial system. In that connection, the Disciplinary Board in its original [petitioner] report[2] stated:

"A long term pattern of misconduct involving forgery, conversion of client's funds, commingling of their funds with his own, and failure to maintain records of receipts and disbursement can justify a finding that such conduct amounts to moral turpitude. In addition, in 1981, after he had admitted drinking, he was still advancing monies to clients and had written to Disciplinary Counsel on May 30, 1980, misrepresenting certain facts."

The case of *In the Matter of [A]*,[3] offers precedent for the case under consideration. In [A], as here, the respondent attorney was an alcoholic whose conduct was undoubtedly influenced by alcoholism. [A's] conduct consisted of accepting $15,000 to "fix" a case and acceptance of an additional $4,000 to suppress evidence that did not, in fact, exist. Respondent was also found to have been involved in the attempted sale of illicit drugs. Two petitions for reinstatement were denied by the Supreme Court. The court, in refusing [A's] reinstatement most likely accepted the board's dissenting opinion wherein it stated:

"Quite simply put, I think that the magnitude of the breach of trust by petitioner in this case and the seriousness of his attempted subversion of the administration of justice do not permit his resumption of prac-

---

2. 67 D.B. 81. A majority of the Disciplinary Board recommended that respondent be suspended for two years in the underlying disciplinary proceedings. The Supreme Court disbarred.

3. See Nos. 26 and 32, D.B. 73 wherein [A's] petition for reinstatement was denied by the Supreme Court after a recommendation for reinstatement by the Disciplinary Board.

tice at this time without further injury to the integrity and the standing of the bar and the public perception of, and confidence in, our system. By this dissent, I do *not* intend to indicate to the court that the matter of the reinstatement of petitioner should be forever closed; rather only, that when I focus, at this time and on this record, on whether petitioner's reinstatement could now be accepted without detriment to the integrity and standing of the bar and the administration of justice, I must conclude that it cannot.

"As I understand the implications of *Keller, supra*, the threshold inquiry articulated by the court presents a burden which must be carried by the disbarred lawyer who seeks the reinstatement. Although disbarment is an extreme sanction which is only imposed in the most egregious cases, within the ambit of such offenses, there is a graduation which results in an inverse relationship between the magnitude of the breach of trust and the likelihood of reinstatement. The greater the magnitude of the breach, the more difficult it will be for the disbarred lawyer to carry *his* threshold burden of establishing that the fact of his reinstatement at that time would not, of itself, be inimical to the standing and integrity of the bar or subservice of the public interest. It is this burden which the record does not address, either by way of evidence or argument. I recognize the difficulty inherent in a burden of proving a negative. However, I believe that *Keller, supra*, has intended that burden as being inherent in the qualitative difference between reinstatement of the suspended lawyer and reinstatement of the disbarred lawyer...." (emphasis in original).

One could argue that [petitioner's] misconduct was not as severe as [A's] misconduct and therefore, the denial of [A's] reinstatement is distinguishable. Un-

doubtedly, if the collective acts of misconduct of [A] and [petitioner] were placed on opposite sides of the scale, the lower side would be [A's]. However, this type of quantitative analysis should not control. The nature of the seriousness of the acts of misconduct and their effect on the public perception of lawyers, is the more pertinent line of inquiry. When thusly viewed, the forgery, deception, commingling and conversion of funds seems to demonstrate a total lack of respect for the honored fiduciary position that a lawyer enjoys. The public cannot be encouraged to trust its legal representatives when, included among its membership, are individuals who conduct themselves as did [petitioner].

I, therefore, conclude that sufficient time has not elapsed to mitigate against the egregious nature of respondent's conduct and conclude that the *Keller* threshold test has not been met.

In further support of this dissent, a review of those cases after *Keller* in which reinstatement was granted, is appropriate.

In [ ], 12 D.B. 79, petitioner's disbarment resulted from a series of charges relating to cases where petitioner failed to act diligently on behalf of his clients and then systematically engaged in cover-up and misrepresentation in an attempt to preclude exposure of his failure to act.[4] Reinstatement was granted with an emphasis on the fact that no appropriation of funds had occurred.

In the matter of [ ], 80 D.B. 85, an early 1965 case, reinstatement was granted in a factual background where petitioner had resigned facing disbarment. Since this was prior to our present disciplinary system, it is impossible to determine what the original acts were

---

4. Report of Disciplinary Board, 12 D.B. 79 at page 21.

that led to the voluntary disbarment before the local common pleas court. His first attempt at reinstatement after seven years was refused, the second was granted after 22 years.

In the [ ] case, 22 D.B. 76, the respondent was disbarred following a 1975 conviction in the U.S. District Court for conspiracy to smuggle Mexican gold into the United States. His first attempt at reinstatement was denied in 1983. On the second petition, the Disciplinary Board remanded the case to the Hearing Committee for analysis of the *Keller* threshold. The Hearing Committee found, and the Office of Disciplinary Counsel agreed, that 11 years was sufficient time for the respondent to be without his license and reinstatement was allowed.

In the matter of [ ], 30 D.B. 79, 1 D.&C.4th 14 (1987), respondent was disbarred on consent following a plea of nolo contendere, to charges of possession of controlled substance and possession with intent to deliver. The *Keller* threshold was held to have been satisfied in this petition for reinstatement.

In the matter of [ ], 26 D.B. 81, 7 D.&C.4th 260 (1990), the petitioning respondent was granted reinstatement. The underlying offenses were that of bribing a public official, false testimony under oath, and laundering of checks. The respondent had been 25 years of age at the time of the commission of the acts, 12 years had expired, and in the interim he had received an M.B.A. at the Wharton School; he exhibited sincere remorse; and had engaged in remarkable community service.

In the [ ] case, 18 D.B. 78, the respondent was originally convicted of 14 counts of making material untrue statements in property reports filed with the Department of Housing and Urban Development, six

counts of fraudulent lot sales, and 12 counts of mail fraud. After eight years, the petition for reinstatement was granted. The reinstatement petition turned, not on the satisfaction of the *Keller* issue, but rather on his moral qualification to re-enter practice.

In [ ], 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989), the petition for reinstatement was granted after nine years. Petitioner was originally disbarred on consent for misconduct stemming from managerial inabilities. Petitioner was unable to satisfactorily handle his case load, his time, and he exhibited a reticence to refusing cases.

[ ], 4 D.B. 76. In this case, reinstatement was recommended by the Disciplinary Board but petitioner died prior to the Supreme Court's decision on the board's recommendation. The Supreme Court, therefore, found the issue to be moot. Respondent had been convicted in the U.S. District Court of interstate transportation of stolen securities. He was disbarred in 1978. His first petition for reinstatement was denied in 1981[5] even though the original order of disbarment said respondent would be eligible for reinstatement after five years from February 6, 1976.

Respondent's second petition was denied in January of 1984 wherein both the Hearing Committee and the board recommended against reinstatement. His third petition for reinstatement was denied in 1986 following a recommendation in favor of reinstatement by both the Hearing Committee and the board. Following the denial of the third petition, respondent petitioned the Supreme Court to reconsider. The court denied the petition to reconsider on March 27, 1986, in an order

---

5. Both the Hearing Committee and the board recommended against reinstatement on the first petition.

which stated: "See *Keller* decision." Twelve years later the fourth petition for reinstatement was pending when respondent died. The Hearing Committee recommended against reinstatement. The board found that the *Keller* threshold had been satisfied on the basis that 12 years had dissipated the magnitude of the crime. Three board members dissented. The first and second petitions had originally been denied by the board because of the absence of restitution. This was cured by the time of the third petition. Throughout, the Office of Disciplinary Counsel claimed that respondent's failure to explain how the bonds, which were the subject of his original conviction, came into his possession, constituted a showing of lack of moral fitness. It was in this procedural posture that respondent died and the issue was found to be moot.

The only reinstatement case following *Keller* in which misuse of client funds was involved is the [B] case, 3 D.B. 81, 3 D.&C.4th 504 (1989). In this case, respondent was disbarred on consent in 1981 for misconduct involving misuse of client funds for gambling debts in a series of unrelated matters for multiple clients. The Office of Disciplinary Counsel did *not* oppose reinstatement. The impropriety was found to have been caused by gambling which the respondent acknowledged and for which he voluntarily sought help.

It therefore appears, that with the exception of [B], *supra,* reinstatement is not likely to be granted where a misuse of funds was involved in the underlying transgression.

This dissent does not include an analysis of the other issues for which the case was originally remanded to the Hearing Committee by the Disciplinary Board; namely, clarification of the financial issues and an analysis of whether or not the respondent was engaged

in the unauthorized practice of law. Should reinstatement be denied and a future petition for reinstatement be presented, those issues will need to be addressed. I do not believe the Hearing Committee's second report adequately resolved those issues.

In conclusion, I recommend to the Supreme Court that respondent's petition for reinstatement be denied.

### ORDER

And now, August 21, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated January 9, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.