**In re Anonymous No. 134 D.B. 90**

Disciplinary Docket no. 134 D.B. 90.

WITHEREL, *Member,* November 21, 1991—.

## HISTORY OF PROCEEDINGS

On December 4, 1990, the Office of Disciplinary Counsel (petitioner) filed a three-count petition for dis-

cipline against [ ] (respondent). The petition alleged that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct:

## CHARGES I, II and III

A. D.R. 6-101(A)(3)—dealing with a lawyer neglecting a legal matter entrusted to the lawyer;

B. R.P.C. 1.3—a lawyer shall act with reasonable diligence and promptness in representing a client; and

C. R.P.C. 1.4(a)—a lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

On December 26, 1990, the matter was referred to Hearing Committee [ ], which was chaired by [ ], Esquire, and included [ ], Esquire and [ ], Esquire.

Due to the death of chair [ ], the matter was reassigned to a special master, the Honorable [ ], on March 12, 1991. On March 28, 1991, the matter was heard by the special master.

On June 11, 1991, the special master entered a report recommending that respondent be suspended from the practice of law for a period of three months.

Respondent filed a brief on exceptions on July 17, 1991, which articulated extenuating circumstances attributable to his conduct. He concluded that no disciplinary violations should be found, or in the alternative, if a violation were to be found, that the appropriate discipline should be of a non-public nature.

Respondent requested oral argument on these exceptions.

On October 6, 1991, petitioner filed a brief opposing exceptions and recommended the imposition of a three-month suspension against respondent.

Oral argument was held on September 13, 1991, before a three-member panel chaired by board member Michael J. Witherel, Esquire, and included members Richard D. Gilardi, Esquire and Katherine Flaherty.

The matter was adjudicated at the September 27, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The board adopts the following findings of fact which have been extensively stipulated to and which also have been amply supported by the evidence and the testimony presented by both parties:

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, [ ], Esquire, was admitted to practice law in the Commonwealth of Pennsylvania in 1983, and his office is located at [ ].

## CHARGE I

(3) In January 1987, [A] retained the law firm of [B] and Associates to represent her in a divorce proceeding.

(4) At that time, respondent was employed at the firm of [B] and Associates.

(5) [A] remitted $183.50 to the firm on January 28, 1987, for the completion of the uncontested divorce.

(6) On February 13, 1987, pursuant to §201(c) of the Divorce Code, a complaint in divorce was filed on the client's behalf.

(7) On May 8, 1987, respondent transmitted to [A] a copy of the complaint, a copy of the acceptance of service, and two affidavits of consent that needed to be executed by both her and her husband, [C].

(8) Although [A's] affidavit of consent was filed on May 21, 1987, [C] refused to execute his affidavit of consent.

(9) In October 1987, pursuant to a federal court consent order arising out of an involuntary bankruptcy proceeding brought against attorney [B], attorney [B] forwarded [A's] case file to respondent.

(10) From October 1987 to June 6, 1988, respondent failed to take any action on [A's] case.

(11) On June 6, 1988, respondent sent correspondence to the client which informed her that respondent was experiencing difficulty serving her spouse. Included in the transmitted items were both an affidavit of consent and an acceptance of service upon which respondent instructed [A] to obtain her husband's signature.

(12) Over four months later, on October 31, 1988, [A] returned [C's] signed affidavit of consent, however, it was inadequate due to the fact that it was undated.

(13) From November 1988 until April 1989, respondent failed to communicate with the client.

(14) It was in April 1989 that [C's] fully executed and dated affidavit of consent was filed.

(15) On May 9, 1989, unaware that [C's] affidavit of consent had been filed, respondent sent him a new affidavit of consent and acceptance of service.

(16) Upon learning that the fully executed affidavit of consent had been filed, respondent served [C] with a copy of the complaint in divorce on July 28, 1989, and secured the entry of a divorce decree on August 2, 1989.

## CHARGE II

(17) In February 1987, [D] retained the law firm of [B] and Associates, where respondent was employed, to represent her in a divorce proceeding.

(18) [D] remitted $237.50 for the completion of her uncontested divorce action.

(19) On March 11, 1987, pursuant to §201(c) of the Divorce Code, a complaint in divorce was filed on behalf of [D].

(20) On June 11, 1987, respondent transmitted an affidavit of consent to [D], as well as an affidavit of consent, acceptance of service, and a copy of the complaint to her husband.

(21) On July 9, 1987, [D's] affidavit of consent was filed.

(22) In October 1987, pursuant to the federal court consent order, attorney [B] forwarded [D's] case file to respondent.

(23) Respondent failed to directly notify the client that he was representing her in her divorce proceeding because he was under the mistaken impression that she had been notified at the time the consent order was entered.

(24) On September 16, 1988, respondent filed both a notice to defend and the plaintiff's affidavit with the prothonotary in [ ] County, pursuant to §201(d) of the Divorce Code.

(25) Respondent failed to serve the §201(d) affidavit on [D's] husband and failed to undertake any further action on behalf of the client.

(26) Between October 1988 and December 1988, respondent failed to return [D's] telephone calls and failed to locate her husband in order to serve him.

(27) On or about May 11, 1989, respondent transmitted an acknowledgement of service and affidavit of consent to [D's] husband at the address he had for him on file, however, the client had retained new counsel.

(28) [D's] divorce was completed by other counsel on July 31, 1989.

## CHARGE III

(29) During October 1987, pursuant to the federal court consent order, respondent received the divorce case file of [E], from his previous employer, [B] and Associates.

(30) An agreement had been negotiated between respondent and attorney [B] in which respondent became responsible for [B's] case.

(31) On October 6, 1987, pursuant to §201(d) of the Divorce Code, respondent filed both the complaint in divorce and [E's] affidavit of consent.

(32) From November 1, 1987, to September 1, 1988, despite [E's] repeated telephone calls, respondent failed to either communicate with her or to take any action on the matter.

(33) Since October 1988, respondent has been unable to locate [E's] husband in order to serve a divorce complaint upon him.

(34) On October 11, 1988, respondent filed a praecipe to reinstate the divorce proceeding.

(35) From October 11, 1988 to August 8, 1990, respondent attempted to locate [E's] husband, but took no further action in finalizing the divorce action.

(36) On August 8, 1990, pursuant to Pa.R.C.P. 430, respondent caused a motion for special order of service to be filed which incorporated respondent's present counsel's affidavit of diligent search.

(37) On that same day, the court ordered that service of the divorce complaint, plaintiff's §201(d) affidavit, and a default notice be delivered to the last known address of [E's] husband, upon which service would be complete upon mailing.

(38) Subsequently, respondent took the necessary steps to finalize the divorce, and a decree was granted on March 25, 1991.

## CONCLUSIONS OF LAW

The board has determined that Charges I, II and III were unfounded and that no violations had occurred. Although each client in these charges experienced some delay in achieving the finalization of their individual divorce proceedings, respondent acted with due diligence and promptness in light of the surrounding circumstances. In addition to his regular caseload, respondent signed a consent order which resulted in his being assigned to over 700 divorce matters, as well as approximately 50 bankruptcy matters. Therefore, after reviewing the circumstances and realizing that none of the clients suffered any losses, the board is of the opinion that the charges against the respondent, as set forth in the petition for discipline, should be appropriately dismissed.

## DISCUSSION

The primary function of the disciplinary system is to protect the public by ascertaining whether an attorney has engaged in conduct which hinders that attorney's ability to practice law. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 281, 472 A.2d 186, 190 (1983). Encompassed in that function is the scrutiny of the circumstances surrounding the attorney's conduct in order to determine whether a sanction should be imposed upon the attorney, and if so, what the nature of that sanction should be. *Id.*

An attorney has a duty to keep clients "minimally apprised or informed as to the status of their cases." *In re Anonymous No. 8 D.B. 87,* 1 D.&C.4th 313, 324 (1988). As a matter of public policy, it is imperative

that clients have knowledge involving how their claims are being effectuated in order for them to render educated decisions. Neglect arises when an attorney's failure to communicate with the client is coupled with other actions including the following: failure to diligently pursue the client's claim; withdrawing without considering the foreseeable prejudice to the client; failure to relinquish the unearned portion of fees paid in advance; or, upon dismissal, failure to transmit the client's file to the newly appointed counsel. *In re Anonymous No. 18 D.B. 82,* 25 D.&C.3d 30 (1983). Actions such as these that form a pattern, tend to debase public perception of the legal system unless disciplined.

The Supreme Court of Pennsylvania within *In re Anonymous No. 8 D.B. 87,* 1 D.&C.4th 313, 315 (1988), held that a pattern of neglect develops when there are multiple charges against an attorney for failing to "pursue the objectives for which he was retained." In that case, there was a prevailing pattern of neglect as was evidenced by the respondent's absolute disregard for administering an estate in one charge, as well as his total inaction toward filing appeals in two other charges. In addition, there were two other instances of misconduct which had occurred at the time the petition was filed. In light of the surrounding circumstances, the court instituted a three-month suspension to make him aware of the seriousness of his actions.

This case can be distinguished from the instant case since it was not respondent's inaction that initiated the delays, but instead it was the extenuating circumstances. Beginning in 1986, respondent was employed at the law firm of [B] and Associates. In 1987, after [B] had entered into bankruptcy, a temporary restraining

consent order was executed against respondent, attorney [F] and attorney [G]. This consent order stated: "On or before September 30, 1987, [B] shall deliver to [respondent] all currently active *divorce and bankruptcy cases,* filed or unfiled, in [B's] possession." (emphasis added) This consent order did not definitively indicate the number of cases which would befall respondent.

In the first week, respondent received 170 unfiled cases. Only one week later, over 500 additional cases were discharged upon respondent. By the end of October 1987, the number of cases from the consent order for which respondent had become obligated to complete, came to a grand total of over 700 divorce cases and approximately 50 bankruptcy cases. In addition, [B] distributed letters to each of respondent's over 750 consent order clients. This letter individually *guaranteed* that *all* clients would have their cases filed, or in the situations where the cases had been filed, their decrees applied for within that week.

Respondent immediately began to tackle each case situation. Respondent did this despite the fact that he was operating as a private practitioner and he had received neither the computer equipment nor secretarial services promised to him by [B] in the consent order. Nevertheless, respondent diligently chipped away at the mound of cases bestowed upon him. All the hours he put into satisfying the claims of each of the over 750 clients went uncompensated; respondent charged no fee for his work in any of these matters.

An attorney's conduct constituting neglect must exhibit something beyond inadvertent neglect in order for it to be punishable under Disciplinary Code 6-

101(A)(3). Within *In re Anonymous No. 24 D.B. 80,* 20 D.&C.3d 214 (1981), the following three categories of neglectful conduct indicating violations were described: first, if there is a pattern of neglect which results in client losses; second, if a single client experiences a loss after an attorney had been repeatedly reminded and warned; and finally, if a single client experiences a loss due to an attorney's neglect and that attorney has had a prior history of being disciplined for such conduct. The most prevalent factor is that discipline is imposed only when a client experiences a loss. The belief is that prior to that occurrence, the client had a remedy in seeking new counsel. *Id.*

For example, in *In re Anonymous No. 25 D.B. 83,* 29 D.&C.3d 246 (1984), the respondent had deliberately solicited substantial numbers of clients pursuing divorces. In eight matters, he took no definite measures to secure the divorces. Each client suffered a loss, including one instance in which a "client became the father of a child born out of wedlock while the client awaited word on the status of his divorce." *Id.* 25 D.B. 83 at 4, 29 D.&C.3d at 248 (1984). The Supreme Court of Pennsylvania considered these circumstances coupled with the respondent's previous record of 19 informal admonitions; he was suspended for six months.

The board is of the contention that the instant case is sufficiently different from the above case. Whereas the respondent in *25 D.B. 83* sought out clients and consciously injured them, respondent in the case at issue was given his caseload of over 750 clients. Furthermore, respondent made all reasonable attempts to contact all of his clients and to satisfy their claims. In fact, to date respondent has successfully brought to

a finish approximately 650 of those cases besides maintaining his own cases. Furthermore, the clients involved in the three charges against him suffered no loss; all three individuals have had their divorce proceedings finalized.

The Supreme Court of Pennsylvania rendered a decision within *In re Anonymous No. 42 D.B. 81,* 41 D.&C.3d 435 (1985) in which charges of neglect against the respondent were dismissed. In that case, the court focused on the respondent's spotless disciplinary record, as well as the fact that not only were his actions not motivated by the desire for improper gain, but his violations also stemmed from "disorganization, overwork, ill health and the loss of a secretary on whom he relied...." *Id.*, 42 D.B. 81 at 22, 41 D.&C.3d at 453 (1985).

The board's contention is that the situation at hand is similar and it too should be dismissed. Respondent accepted cases in a consent order which did not specify the amount he would receive. He was issued over 700 divorce cases and approximately 50 bankruptcy cases for which he retained no compensation. Out of all those cases, only three individuals were dissatisfied with his work and these clients experienced neither injury nor undue prejudice. Finally, respondent has an impeccable disciplinary record and continues to act within the ethical boundaries by diligently pursuing all of his clients' claims.

## DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines, based upon the foregoing findings and discussion, that the instant petition for discipline be dismissed.

Messrs. Schiller, Paris and Ms. Flaherty did not participate in the adjudication.

## ORDER

And now, November 21, 1991, upon consideration of the report and recommendation of special master, Honorable [    ], filed June 11, 1991, and after oral argument before a three-member panel of the board; it is hereby ordered that the charges against [respondent], docketed at No. 134 D.B. 90, be dismissed.