**In re Anonymous No. 42 D.B. 92**

Disciplinary Board Docket no. 42 D.B. 92.

To The Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

FRIEDMAN, *Member,* July 19, 1993—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

HISTORY OF PROCEEDINGS

On May 5, 1992, the Office of Disciplinary Counsel filed a petition for discipline against [    ]. Respondent did not file an answer to the petition.

On August 4, 1992 the matter was referred to Hearing Committee [ ], which was chaired by [ ], Esq., and included members [ ], Esq., and [ ], Esq. Hearings were held on August 24, 1992 and on November 12, 1992. On February 19, 1993 the hearing committee filed its report and recommended that respondent be disbarred. No exceptions were filed by either the petitioner or respondent.

The matter was adjudicated at the April 23, 1993 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The Disciplinary Board of the Supreme Court of Pennsylvania adopts and incorporates by reference herein the Hearing Committee's findings of fact:

(1) Respondent, [ ], was born in 1962, was admitted to practice law in the Commonwealth on December 3, 1987, maintains his office at [ ], and is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(2) Although under subpoena, [A] failed for medical reasons to appear at two scheduled hearings. Petitioner then advised the Hearing Committee that the allegations of Charge I would not be pursued.

(3) In March 1989, [B] consulted respondent regarding two disputes which she was having with her father, [C].

(4) The first dispute involved a joint savings account, of which [B] was the equitable owner, but which [C] refused to release to her. The second dispute involved an automobile for which [B] paid, but the title of which

was listed in her father's name. Respondent agreed to represent [B] in these matters.

(5) On April 27, 1989, respondent wrote a letter to [C] demanding that the title to the car be transferred to [B] within 15 days, or he would commence a lawsuit to recover either the vehicle or the sum of $2,612.24, plus interest. The letter did not mention the joint checking account.

(6) A few weeks later [C] attempted to render a check to respondent in an amount a few hundred dollars less than requested in respondent's letter. Respondent refused the check without advising [B] that it had been tendered or consulting with her as to whether it should be accepted.

(7) From the time of the attempted tender in or around May 1989 until August or September 1989, respondent took no further action on behalf of [B].

(8) Finally, in August or September 1989, respondent wrote a second letter to [B's] father to which he did not respond.

(9) On November 3, 1989 respondent told [B] that he would bring her case to court in February 1990. The parties signed a fee agreement in which respondent agreed to represent [B] in this matter for $300. At this time [B] wrote a check for respondent's fee, a check for the sheriff, and a check for the prothonotary.

(10) Respondent never filed a complaint or took other formal action to bring [B's] case before a court.

(11) Prior to February 1990, respondent informed [B] that her court date in February had been "canceled." Since respondent never filed her complaint, and she therefore could not have had a court date, respondent's statement

that the court date had been "canceled" was a misrepresentation.

(12) In March 1990 [B] again met with respondent in his office. At this time, respondent promised that she would go to court the week of May 7, 1990. Respondent represented to her that her action had been filed, and that her court date was firm. This was false as respondent still had not filed the action.

(13) Respondent later told [B] to take off from work on Thursday, May 10, 1990 because this was her court date. To the extent that this constituted a representation that a court date had been set, it was a misrepresentation as respondent still had not filed a complaint.

(14) On May 10, 1990 [B] went to respondent's office at 9 a.m.; she was informed that he was at a hearing in [    ]. [B] then went to the courthouse to check the case list and discovered that respondent had not filed any action on her behalf.

(15) On approximately May 16, 1990 [B] had an appointment with respondent to discuss her case at 5:30 p.m. Respondent did not appear for the appointment, nor did he cancel it. [B] was told that respondent was in an automobile accident. [B] attempted to call respondent but was unable to reach him through his answering service.

(16) On May 21, 1990 respondent had another appointment with [B] at 5:30 p.m. At this meeting respondent informed her that he would push for her case to be in court within two weeks. [B] then questioned respondent about why her case was not even filed, and he stated in effect that he did not know how they worked filing cases at the prothonotary's office. Respondent set another appointment with her for May 23, 1990.

(17) Respondent failed to keep or to cancel scheduled appointments with [B] on May 23 and May 29, 1990.

(18) On June 5, 1990 [B] sent respondent a certified letter which his office received on June 6, 1990 in which she terminated respondent's services and requested the return of her files as well as the $300 fee which she had paid to him.

(19) [B] did not receive her files. In June 1990 respondent informed her that he had put them into the mail. This statement was false as respondent had not mailed the file to [B].

(20) Respondent finally turned his file over to [B] on August 6, 1991, over a year after demand and after she had filed her complaint with the Office of Disciplinary Counsel.

(21) On August 6, 1991 respondent also wrote a personal check to [B] to refund her fee in the amount of $300. When [B] deposited this check in her bank, it was returned for insufficient funds, and [B] was forced to use money intended for tuition to cover checks she had written against the deposit. [B] redeposited the check on August 12, 1991 at which time it was paid.

(22) [B] later recovered her money from the savings account from the bank by her own efforts.

(23) [B] never recovered any of the money she invested in the automobile.

(24) In June 1990 [    ] and [    ] [D] purchased a used car from [E] Motors which was covered by a "50/50" warranty.

(25) The [D] experienced mechanical problems with the automobile which the dealer refused to repair under

the warranty. They performed the repairs themselves at a cost of approximately $1500.

(26) On September 12, 1990 Mrs. [D] retained respondent to represent the [D] in a suit against [E] Motors and its proprietor, [F], to recover money in the amount of half of what they had expended for repairs. On that date Mrs. [D] paid respondent's fee in the amount of $254.

(27) Respondent subsequently advised Mrs. [D] that he had filed a complaint against [E] Motors and that a default judgment had been entered in her favor.

(28) However, respondent filed no action or judgment in favor of the [D] against either [E] Motors or [F].

(29) In April 1991 respondent advised Mrs. [D] that the defendant had tendered a check to stop a scheduled sheriff's sale but that it was returned to the defendant. This statement was false as the defendant denied liability and had never tendered a check to anyone.

(30) In June 1991 respondent advised Mrs. [D] that the defendant had tendered a cashier's check in the amount of approximately $1500 which he had seen and which would soon be delivered to him. This statement was false as the defendant had never tendered a check to anyone.

(31) Respondent also advised Mr. [D] that the check was down at the courthouse but that he could not get away from the office to pick it up. This statement was also false.

(32) After speaking to Mrs. [D] in June 1991, respondent did not provide the [D] with any further information regarding their case despite numerous inquiries by the [D] via telephone and in person.

(33) On July 23, 1991 the [D] sent respondent a letter via certified mail demanding that he resolve the

matter and stating that they expected to hear from him within the week. Respondent did not claim this letter, which was returned to the [D].

(34) After sending the letter of July 23, 1991 to respondent Mrs. [D] again spoke to respondent's secretary and was advised that a check would be coming. Respondent never returned Mrs. [D's] calls.

(35) Mrs. [D] subsequently retained [G] to pursue her case against [E] Motors. [G] called respondent's office and wrote letters on December 5 and 23, 1991 requesting the file and any information respondent could provide about the case. However, respondent did not return [G's] calls or answer his letters.

(36) [G] recovered the sum of $799 for the [D] for which they paid him a fee of $500. The [D] never recovered the $254 they paid respondent so their net recovery after paying the fees of respondent and [G] was $45.

(37) On August 14, 1990 [    ] and [    ] [H] consulted respondent regarding a claim they sought to assert against their neighbors, [ ] and [ ] [I] and [J], regarding ongoing damages to their home caused by water runoff problems.

(38) Respondent agreed to take the [H's] case and told them to schedule another appointment with him after they obtained an estimate of damages from a contractor.

(39) The [H] obtained a contractor's estimate and met with respondent again on September 12, 1990. The estimates indicated that the damages were approximately $8,000. At this point, the [H] paid respondent's requested fee in the amount of $500. Respondent advised them that he would draft papers.

(40) On November 8, 1990 the [H] signed the verification for a draft complaint at respondent's office. Respondent provided a copy of the complaint to the [H].

(41) On February 11, 1991 respondent filed in the Court of Common Pleas of [  ] County a praecipe for writ of summons against the [I] only, which was docketed to no. [  ]. However, the writ of summons was never delivered to the Sheriff's Office for service.

(42) In February 1991 the contractor who had provided an estimate to the [H] died. Respondent told the [H] that he would contact another contractor for an estimate, but no contractor engaged by respondent ever contacted the [H].

(43) Respondent did not take any action to advance the lawsuit after the writ of summons was filed.

(44) Respondent did not respond to numerous calls from the [H] regarding the status of their case between February 1991 and August 1991. They scheduled eight appointments with him, all of which were canceled by respondent. The only appointment respondent kept was one that the [H] made in a false name.

(45) On August 9, 1991 Mrs. [H] wrote to respondent to express the [H's] dissatisfaction with his lack of progress and to demand refund of the fee of $500 they paid.

(46) On August 20, 1991 Mr. [H] met with respondent. Respondent advised him that he would refund the [H] fees if they consented to his withdrawal. Mr. [H] indicated that this was acceptable. Respondent stated that he would draft the release and return their fee by Thursday, August 22, 1991.

(47) The [H] called respondent on several occasions between August 22 and September 5, 1991 on which

occasions respondent or his secretary falsely stated that the check had been mailed. On other occasions during this time respondent or his secretary stated that the check would be mailed by certain dates, which promises were not kept.

(48) The [H] wrote to respondent on September 13, 1991 demanding return of their fee of $500. Respondent did not reply.

(49) Respondent did not forward to the [H] any document for them to consent to his withdrawal, nor refund their fee, nor return their file containing their original evidence.

(50) The [H] filed a claim with the Client Security Fund to recover their fee.

(51) On November 8, 1991 the [H] again wrote to respondent, terminated his services, and threatened to sue him if he did not return their fee.

(52) Respondent gave the [H] a check to refund their fee on November 15, 1991.

(53) The [H] eventually worked out the ongoing drainage problem with their neighbors through their own efforts. They never recovered any sum for damages they had already sustained.

(54) On March 24, 1989 [K] suffered a broken ankle in an accident on the property of [L] Church in [    ], Pa.

(55) On June 13, 1989 [K] retained respondent to represent her in actions against the Diocese of [    ] and any other parties regarding this accident. A contingent fee agreement was signed on that day.

(56) [K] had known respondent for many years, and in fact had been his teacher when respondent was in the fourth grade.

(57) Between June 1989 and October 1991 [K] met with respondent on several occasions regarding the progress of her case. Respondent told her several times that the diocese was willing to settle the matter for a figure "in the high 90's" but that he recommended that she should seek a recovery of $150,000 to $175,000.

(58) Respondent canceled an appointment scheduled for June 10, 1991 and subsequently canceled several appointments [K] made with him.

(59) Respondent also failed to respond to telephone calls and correspondence which [K] sent to him.

(60) Respondent did not file any lawsuit on [K's] behalf in the [    ] County Court of Common Pleas, although he advised [K] that any action would have to be filed in that county. Respondent took no action to arrest the running of the statute of limitations on [K's] claim despite the fact that he was employed less than three months after the accident occurred.

(61) As of March 23, 1991 [K's] claim was barred by the statute of limitations. However, respondent did not advise her of that fact, nor did he advise her to seek counsel regarding his potential liability for negligence. In fact, [K] knew about and was concerned with the effect of the running of the statute of limitations, but relied on respondent's assurances that he had protected her interest by filing suit, which was false.

(62) [K] subsequently retained [M], Esq., to represent her in an action against respondent for malpractice.

## CONCLUSIONS OF LAW

By his conduct in the [B] matter the board has determined that respondent has violated the following Rules of Professional Conduct:

(a) Rule of Professional Conduct 1.2(a), which requires a lawyer to consult with a client concerning the objectives of the representation and abide by the client's decision;

(b) Rule of Professional Conduct 1.3, which requires a lawyer to act with reasonable diligence and promptness in representing a client;

(c) Rules of Professional Conduct 1.4(a) and (b), which require a lawyer to keep a client reasonably informed about the status of a matter, to promptly comply with reasonable requests for information, and to explain a matter to the extent necessary for a client to make informed decisions regarding the representation;

(d) Rule of Professional Conduct 1.16(d), which requires a lawyer, upon termination of representation, to take steps to the extent reasonably practicable to protect a client's interests including surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned; and

(e) Rule of Professional Conduct 8.4(c), which forbids a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation (separate violations by misrepresentations of the status of the matter to the client, and by giving the client a check drawn on insufficient funds).

By his conduct in the [D] matter the board has determined that respondent has violated the following Rules of Professional Conduct:

(a) Rule of Professional Conduct 1.3, which requires a lawyer to act with reasonable diligence and promptness in representing a client;

(b) Rule of Professional Conduct 1.4(a), which requires a lawyer to keep a client reasonably informed

about the status of a matter and to promptly comply with reasonable requests for information; and

(c) Rule of Professional Conduct 8.4(c), which forbids a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

By his conduct in the [H] matter the board has determined that respondent has violated the following Rules of Professional Conduct:

(a) Rule of Professional Conduct 1.3, which requires a lawyer to act with reasonable diligence and promptness in representing a client;

(b) Rule of Professional Conduct 1.4(a) and (b), which require a lawyer to keep a client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information;

(c) Rule of Professional Conduct 1.16(a)(3), which requires a lawyer to withdraw from representation when discharged;

(d) Rule of Professional Conduct 1.16(d), which requires a lawyer upon termination of representation to take steps to the extent reasonably practicable to protect a client's interests, including surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned; and

(e) Rule of Professional Conduct 8.4(c), which forbids a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

By his conduct in the [K] matter the board has determined that respondent has violated the following Rules of Professional Conduct:

(a) Rule of Professional Conduct 1.3, which requires a lawyer to act with reasonable diligence and promptness in representing a client;

(b) Rule of Professional Conduct 1.4(a) and (b), which require a lawyer to keep a client reasonably informed about the status of a matter, to promptly comply with reasonable requests for information, and to explain a matter to the extent necessary for a client to make informed decisions regarding the representation; and

(c) Rule of Professional Conduct 8.4(c), which forbids a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## DISCUSSION

Petitioner bears the burden of proving violations of the Rules of Professional Conduct by clear and convincing evidence. *In re Anonymous No. 24 D.B. 89,* 8 D.&C.4th 207, 216 (1990). In determining whether violations have been proven the board is obligated to conduct a de novo review of the record using the Hearing Committee's findings as guidelines for judging the credibility of witnesses. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). After reviewing the hearing transcripts and the stipulation of the parties the board readily concludes that the petitioner has met its burden.

The principal function of the disciplinary system is to "protect the public from unfit lawyers and to maintain the integrity of the legal system." *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The board is required to assess the nature and extent of respondent's misconduct and to recommend appropriate sanctions. *Lucarini, supra.*

Respondent's misconduct is egregious. The record reveals a pattern of neglect, misrepresentation and failure to communicate with his clients. In the [B] case re-

spondent received a check to settle the case but refused to accept it. He refused the check without consulting with his client. He failed to take any subsequent action to protect his client's interests and repeatedly lied to her about the progress of the case. He failed to return her file to her until after she filed a complaint with the Office of Disciplinary Counsel. When respondent returned his client's fee the check was returned for insufficient funds.

Respondent also repeatedly lied to the [D] about his efforts on their behalf. He refused to communicate with them and refused to return their file. They eventually retained other counsel to pursue their claim. Respondent never returned the fee which they had paid him.

Respondent also failed to communicate with Mr. and Mrs. [H]. He filed a writ of summons on their behalf and never had it served. He took no action to pursue their claim. He canceled repeated appointments with them. The [H] were only able to recover their fee after they made an appointment with respondent under an assumed name and cornered him in his office.

In the [K] case respondent told his client that the case was near settlement. He discussed with her settlement in the range of $150,000 to $175,000. He told her that suit had been filed. He then kept canceling her appointments. In fact, respondent never pursued the case or filed suit. [K] first learned that suit had not been filed after the statute of limitations had already expired.

The Hearing Committee has recommended that respondent be disbarred. Although the board agrees that respondent must be severely sanctioned we are of the view that a period of suspension is the appropriate disposition. *In re Anonymous No. 39 D.B. 81,* 23 D.&C.3d 24 (1982);

*In re Anonymous No. 62 D.B. 81,* 27 D.&C.3d 148 (1983).

In determining the appropriate period of suspension the board looks to respondent's misconduct as well as any mitigating or aggravating factors. His attitude towards the disciplinary process appears to be consistent with the manner in which he handled the cases which are the subject of the present petition. Respondent did not file an answer to the petition for discipline. He also failed to present any type of defense to the allegations. He appeared for the hearing on October 29, 1992 and requested a continuance due to a claimed inability to speak. The Hearing Committee denied the request and noted that respondent did not seem to have great difficulty speaking. Respondent refused to participate in the hearing and left, indicating that he was going to seek medical attention. The Hearing Committee chairman thereafter wrote and telephoned respondent's office to advise him of the second scheduled hearing at which he could appear and present testimony and/or cross examine witnesses who had testified at the first hearing. Respondent ignored the chairman's communications.

In *In re Anonymous No. 39 D.B. 81, supra,* we recommended a six-month suspension for a single case of neglect coupled with misrepresentation. The Supreme Court suspended the respondent for one year. Similarly, in *In re Anonymous No. 62 D.B. 81, supra,* the Supreme Court imposed a suspension of one year for two charges of neglect and misrepresentation. In *In re Anonymous No. 54 D.B. 83 and 59 D.B. 83,* 34 D.&C.3d 606 (1985), the Supreme Court suspended the respondent for two years for nine cases of neglect and misrepresentation. (See

also, *In re Anonymous No. 15 D.B. 81,* 22 D.&C.3d 254 (1981), where the court disbarred respondent with a prior record for two cases of neglect.) In the present case, respondent's violations of the Rules of Professional Conduct coupled with his cavalier attitude toward the disciplinary system mandate a three-year suspension. Such a period of suspension will serve to protect the public from respondent and maintain the integrity of the legal system. This level of discipline will further require respondent to show by clear and convincing evidence that he has the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth before he can be reinstated. Pa.R.D.E. 218.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended for a period of three years. The board further recommends that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Pa.R.D.E. 208(g).

Mr. Hill, Ms. Lieber and Ms. Flaherty did not participate in the adjudication.

## ORDER

And now, October 13, 1993, upon consideration of the report and recommendations of the Disciplinary Board dated July 19, 1993, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of three years, and

he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Justice Larsen, Zappala and Papadakos dissent and would enter a rule upon respondent to show cause why he should not be disbarred.