**In re Anonymous No. 124 D.B. 96**

Office of Disciplinary Counsel no. 124 D.B. 96.

Nix III, *Member,* July 15, 1998—

## I. HISTORY OF PROCEEDINGS

On October 3, 1996, a petition for discipline was filed against respondent by Office of Disciplinary Counsel. Respondent filed an answer on November 25, 1996.

On November 26, 1996, the petition was referred to Hearing Committee [ ] comprised of Chair [ ], Esquire, and Members [ ], Esquire and [ ], Esquire.

On December 2, 1996, an answer supplement to the petition for discipline was filed by respondent.

On February 21, 1997, [ ], Esquire entered his appearance on behalf of respondent.

On April 29, 1997, a disciplinary hearing was held.

The Hearing Committee filed its report on January 20, 1998, recommending that the respondent receive a one-month suspension.

Petitioner filed a brief on exceptions on February 9, 1998 and requested that a two-year suspension be imposed. Respondent filed a brief on exceptions on March 2, 1998, requesting oral argument, and requested that an informal admonition or private reprimand be imposed.

On April 13, 1998, respondent requested that the record be reopened which request was opposed by petitioner.

On May 4, 1998, this board denied the respondent's request to reopen the record.

On May 20, 1998, oral argument was held in the District III Office before Chair Robert N.C. Nix III, and Members Carolyn Raven Rudnitsky and Richard W. Stewart.

This matter was adjudicated at the June 10, 1998, meeting of the board.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty

to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [   ], was born on March 28, 1959 and was admitted to practice law in the Commonwealth of Pennsylvania on or about May 31, 1991. In his latest attorney registration statement, respondent listed his place of employment and mailing address as the law firm of [   ], which has an office at [   ]. Respondent is currently on inactive status in the Commonwealth of Pennsylvania and is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) In October 1990, respondent filed an application for admission to the bar of the Commonwealth of Pennsylvania.

(4) In response to question 11(a) on that application, which asks whether the applicant has "within the last three years undergone treatment or been committed to an institution for treatment of a mental illness," respondent checked "no."

(5) That answer was false, in that respondent had been hospitalized periodically beginning in 1982 for "nervous breakdowns" and had been diagnosed in 1988 as suffering from a "bipolar disorder."

(6) Respondent intentionally omitted this information on his bar application because he believed that the disclosure of his mental condition would prevent him from becoming licensed in Pennsylvania.

(7) Respondent has never practiced law in the Commonwealth of Pennsylvania and went on inactive status in Pennsylvania in May 1997.

(8) Respondent's history of mental illness began in 1982, and he was eventually diagnosed in 1988 as suffering from a bipolar disorder that required periodic hospitalizations.

(9) His condition was initially treated with lithium and haldol, which treatment was incorrect.

(10) His drug treatment was corrected and since the change in medication to lithium and risperdal, no hospitalizations have been necessary.

(11) Respondent sees a psychiatrist on a quarterly basis to monitor his condition and drug treatment.

(12) In March of 1991, respondent subsequently became a member of the Washington, D.C. Bar. He failed to disclose his mental history to the Washington, D.C. authorities.

(13) In December 1995, respondent applied for admission to the Maryland Bar and on this application, he voluntarily disclosed his mental health history.

(14) By letter dated December 15, 1995, respondent voluntarily informed both the Office of Disciplinary Counsel and the Washington, D.C. authorities of his failure to disclose his mental health history.

(15) Respondent had concerns about the confidentiality of such information.

(16) Respondent believed that such information was strictly confidential between him and his doctor.

(17) Respondent believed that the stigma of being known as a person with a mental illness would end his legal career before it had started.

(18) Question 11(a) on the Pennsylvania Bar application is no longer asked since the passage of Americans with Disabilities Act.

## III. CONCLUSIONS OF LAW

Respondent's failure to truthfully respond to question 11(a) on his Pennsylvania Bar application is a violation of R.P.C. 8.1(a) and R.P.C. 8.4(c) & (d).

## IV. DISCUSSION

There is no question that respondent's misconduct is a violation of the Rules of Professional Conduct, and the only issue before this board is the determination of the appropriate discipline. In determining the appropriate discipline, the board must be mindful of the precedents which provide a benchmark for tailoring an appropriate discipline to a particular set of facts. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). Further, this board must also be cognizant of the fact that our bar recognizes the seriousness of the misconduct, as it applies to the public's need for confidence in the system. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

It is also well settled that the Rules of Professional Conduct apply to attorneys even though their transgressions were committed prior to their admittance to the bar. *Office of Disciplinary Counsel v. Zdrok,* 538 Pa. 41, 645 A.2d 830 (1994).

In cases involving the failure to truthfully answer a question on the bar application, our Supreme Court has consistently imposed public discipline. In *In re Anonymous No. 8 D.B. 94,* 29 D.&C.4th 315 (1995), the respondent in her bar application failed to disclose the fact that she had been arrested for driving under the influence and possession of a controlled substance. She also failed to completely list her employment for the last seven

years and to list all the bar examinations for which she had sat. She was suspended for 12 months.

In *In re Anonymous No. 80 D.B. 94,* 36 D.&C.4th 31 (1996), the respondent was arrested on seven occasions between 1978 and 1987. In 1989, he applied for admission to the bar but failed to reveal any of his arrests. Subsequent to his admission to the Pennsylvania Bar, he applied for admission to the Delaware Bar. Despite the fact that the Delaware authorities notified respondent that they were aware of two of his arrests, he failed to disclose the five other arrests, nor did he contact the Pennsylvania Bar. He did not contact Pennsylvania until after he was denied permission to sit in Delaware, after which time, he disclosed all violations. He was suspended for two years.

In *In re Anonymous No. 6 D.B. 94,* 43 D.&C.4th 150 (1999), the respondent was arrested for sexual solicitation of a male police officer. He failed to disclose on his bar application that he was arrested. Although this charge was ultimately dismissed, he was suspended for one year and one day.

In *In re Anonymous No. 24 D.B. 79,* 15 D.&C.3d 199 (1980), the respondent failed to disclose that he had applied for admission to the Maryland Bar. He testified that his withdrawal of his Maryland Bar application acted as a nullification of the application and obviated any need to disclose it. This board imposed an informal admonition.

It is clear from these precedents that the intentional falsification of information on a bar application usually warrants a suspension from the practice of law. However, the instant case does not involve the failure of an applicant to disclose some past conduct. This respondent failed to disclose the existence of a medical condition, mental illness.

At the hearing respondent testified to his medical history and drug treatment. Respondent's history of mental illness began in 1982. In 1988 respondent was diagnosed with bipolar disorder. This disorder resulted in periodic hospitalizations for respondent. Respondent was initially treated with a combination of lithium and haldol. This treatment was not effective and was later corrected in 1994 by a change in medication to lithium and risperdal. This combination has been successful and respondent has not suffered any setbacks. Respondent continues to see a psychiatrist to monitor his condition and medications.

In explaining why he provided a false answer on the bar application, respondent testified to his belief that the stigma of being known as a person with a mental illness would adversely affect his career aspirations, and he expressed his concern as to the confidentiality of the information. The board has always been cognizant of the stigma associated with mental illness, and we understand respondent's belief that any lack of confidentiality might end his career before it started. Certainly, such a revelation about anyone, in general, but a professional in particular, would have a devastating effect on one's career. In evaluating the testimony of respondent, the board does not find that respondent's mental condition caused him to engage in the misconduct, as there was no specific testimony on that point. The board does conclude that respondent's testimony, while not excusing his misconduct, certainly helps to explain his motivation and should be evaluated in that light.

Another factor that must be considered is the removal of the question concerning mental health history from the bar application after the passage of the Americans

with Disabilities Act. By removing this question from the bar application, one is led to surmise that the question on its face is inappropriate. The removal of this question adds credibility to respondent's concerns.

Other factors which perhaps are not mitigation, but crucial pieces of the puzzle, include the fact that respondent did all he could to cure his violation, he cooperated with the Office of Disciplinary Counsel and he demonstrated that he is suitably remorseful. It must also be noted that absent respondent's affirmative disclosure of his mental health history, it is unlikely that the issue would have ever been brought to light.

Absent the specific facts of this case, petitioner's recommendation of a two-year suspension appears adequate. However, this board must differentiate between the failure to disclose some past conduct, as opposed to a mental illness. Having taken note of this difference, the board feels that the case of *In re Anonymous No. 24 D.B. 79 supra,* is most analogous to the instant matter. The instant matter is arguably more serious than the previously cited case, due to the obvious intent in the respondent's conduct.

However, given the facts surrounding this particular case, public discipline is not warranted. The Hearing Committee recognized the unique nature of this case and the numerous mitigating factors, as does this board. Thus, they recommended a one-month suspension stating that this discipline should encourage those who have erred to remedy, as best they can, their errors. However, a suspension, whether it be one month or two years, would be unduly harsh under the circumstances.

Finally, this board must take note and recognize the professional manner within which petitioner has con-

ducted itself. Clearly, petitioner, in addressing that most difficult of tasks, the determination of discipline, may have felt their hands were bound. Petitioner is correct in its efforts to send the message that misrepresentations of past conduct will not be tolerated. However, this board after weighing the facts and equities must disagree with petitioner's recommendation in this matter and this board has decided to subject the respondent to a private reprimand.

## V. DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines that the respondent, [    ], shall receive a private reprimand. The expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Stewart dissented without recommendation.

Board Members George and Cunningham did not participate in the June 10, 1998 adjudication.

## ORDER

And now, July 15, 1998, upon consideration of the report and recommendation of Hearing Committee [    ] filed January 20, 1998; it is hereby ordered that [respondent] be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement. Costs shall be paid by the respondent.