472 A.2d 186

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

**v.**

**Robert S. LUCARINI, Respondent.**

Supreme Court of Pennsylvania.

Argued June 29, 1983.

Decided Oct. 14, 1983.

Barbara S. Rosenberg, Asst. Disciplinary Counsel, Philadelphia, for petitioner.

Samuel C. Stretton, West Chester, for respondent.

## OPINION OF THE COURT

HUTCHINSON, Justice.

This matter is before us on Disciplinary Counsel's and respondent's cross-exceptions to our Disciplinary Board's report in which a majority of the Board recommended respondent's suspension from the practice of law for two years.[1] Disciplinary Counsel contends respondent must be disbarred because he converted clients' funds. While respondent admits he commingled clients' funds, he argues

---

1. Five Board members dissented, recommending lesser sanctions. Three of the dissenters would have suspended for only one year and two would have imposed no suspension, limiting the sanction to public censure.

that discipline harsher than public censure is inappropriate because his conduct, while not excused, was mitigated as the product of his self-confessed alcoholism.  He points out that he recognized that problem, sought help and treatment for it and began recovery from it by abstaining before these proceedings began.  Moreover, he argues no client suffered actual loss from his commingling and that his alcoholic rehabilitation shows suspension is unnecessary to protect the public.  We agree that respondent should be disbarred because claimant's continuing unethical conduct after this investigation began leads us to believe his continued practice is likely to pose a danger to the public.  His continued concealment of his juggling of clients' funds after this investigation began and especially his unwillingness to release the names of current clients to the Board so that the records he submitted in support of his assertion that all current client funds were accounted for could be verified by audit procedures normal in the accounting profession leaves us unconvinced of his total honesty with himself and the Board.  Under such circumstances the admitted conversion of client funds is insufficiently mitigated to avoid disbarment.  Therefore, we hold respondent must be disbarred for the protection of the public.

These proceedings began when the Office of Disciplinary Counsel filed a Petition for Discipline against respondent on November 24, 1981.  That petition set out four charges detailing conduct constituting violations of several Disciplinary Rules of the Code of Professional Responsibility.[2]  On December 28, 1981, respondent filed an answer which admitted all the charged violations of the Disciplinary Rules except that alleging violation of DR 1–102(A)(3) (illegal conduct involving moral turpitude).  His answer also contained affirmative defenses as evidence of his reform and rehabilitation and in mitigation of the violations.  The case was assigned to a Hearing Committee of the Board, which held hearings on April 6, 7 and 22, 1982.  Because respon-

**2.**  Respondent was charged with violations of DR 1–102(A)(3), (4) and (6); DR 9–102(A) and DR 9–102(B)(1), (3) and (4).  These charges are considered in detail later in this opinion.

dent had admitted the disciplinary violations, the hearings were combined to determine the facts underlying the disciplinary violations and the extent of discipline to be imposed.

The Hearing Committee filed its report on January 10, 1983, with two members recommending a one-year suspension and the third member recommending a two-year suspension. Both Disciplinary Counsel and respondent filed exceptions with the Board, and a three-member panel of the Board heard oral argument. On May 25, 1983 the Board filed its Report and Recommendation with our Court. As noted, the majority of the Board recommended a two-year suspension, while three members dissented and recommended a one-year suspension and two members recommended only public censure.[3] Both Disciplinary Counsel and respondent filed exceptions to this Court, we heard oral argument on June 29, 1983[4] and entered an order disbarring respondent on July 1, 1983, 501 Pa. 441, 462 A.2d 206, with this opinion to follow. In it we now set forth the reasons which lead us to determine that disbarment was the appropriate discipline on the facts of this case.

■ At the outset we note that our review in attorney discipline cases is *de novo*. Thus we are not bound by the findings of the Hearing Committee or the Disciplinary Board, except as guidelines for judging the credibility of witnesses. *Office of Disciplinary Counsel v. Knepp*, 497 Pa. 396, 441 A.2d 1197 (1982); *Office of Disciplinary Counsel v. Lewis*, 493 Pa. 519, 426 A.2d 1138 (1981); *Matter of Green*, 470 Pa. 164, 368 A.2d 245 (1977). In the present case, however, respondent has admitted his misconduct. Hence there are no factual disputes. Thus we see no basis

3. The Board is composed of 13 members, 11 attorneys who are members of the Pennsylvania Bar and 2 non-lawyer electors. Pa.R. D.E. 205(a).

4. We have jurisdiction of this case under Article V, Section 10(c) of the Pennsylvania Constitution and Pa.R.D.E. 103, 201(a) and 208(e), conferring "inherent and exclusive power [on the Supreme Court] to supervise the conduct of attorneys who are its officers." Pa.R.D.E. 103.

for disturbing the Board's findings of fact, which we now summarize.

Charge I relates to respondent's representation of Dorothy and Edward Cameron in a personal injury action arising from an automobile accident in which Mrs. Cameron was injured. The Board found that respondent had represented to the Camerons that their claim had been settled for an amount higher than the actual settlement. Respondent obtained the Camerons' signatures on a release which reflected the higher amount, then placed the Camerons' signatures on the settlement draft for the lower amount actually offered by the insurer without the knowledge or consent of the Camerons.

Charge II, also arising from the Cameron case, relates to respondent's handling of the settlement funds. The Board found that the funds were deposited in an account labeled "escrow account" from which respondent subsequently made withdrawals for his own use without the knowledge or permission of the Camerons. As a result of the withdrawals, the balance in the account fell below the amount necessary for a full distribution to the Camerons and one of Mrs. Cameron's treating physicians. The Board further found that the funds ultimately used to pay the Camerons belonged to other clients and were improperly withdrawn from escrow. Moreover, respondent had withheld from the Camerons certain monies owed to Mrs. Cameron's physician and used this money for his own purposes. Despite the fact that the money had not been paid to the doctor, respondent showed it as paid on the Statement of Distribution which he gave the Camerons. The money was later paid only after Disciplinary Counsel inquired into the matter.

Charge III alleges that on two occasions respondent intentionally misrepresented to Disciplinary Counsel that he had not converted funds belonging to the Camerons and Mrs. Cameron's physician, and that at all times he had funds sufficient to cover the amount owed to the Camerons. The Board found that respondent knew he had converted the funds and that his escrow account was insufficient to

cover monies owed when he made these representations to Disciplinary Counsel.

Finally, Charge IV alleges a general pattern of conduct during a two year period (1978–1980) in which respondent repeatedly commingled funds belonging to clients with his own funds; converted funds belonging to clients for his own use without their knowledge or permission; failed to maintain funds in escrow adequate to meet his obligations to his clients and failed to notify clients of the receipt of their funds or to promptly account for these funds to his clients.

The Board found that the conduct alleged in the four charges which respondent admitted constituted violations of the following Disciplinary Rules as paraphrased:

DR 1–102(A)(4)  (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation);

DR 1–102(A)(6)  (a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law);

DR 9–102(A) (all client funds paid to a lawyer shall be placed in one or more identifiable bank accounts in the state where the law office is situated and no funds of the lawyer shall be deposited in it);

DR 9–102(B)(1)  (a lawyer shall promptly notify a client of the receipt of his funds, securities or other properties);

DR 9–102(B)(3)  (a lawyer shall maintain complete records of all funds, securities and other properties of clients and render appropriate accounts to a client regarding them); and

DR 9–102(B)(4)  (a lawyer shall promptly deliver to the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive).[5]

---

**5.** It was also alleged that this conduct constituted a violation of DR 1–102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude).  Respondent denied this allegation.  The Hearing Committee found that he had not violated this disciplinary rule, but the Board, holding that "[a] long term pattern of misconduct involving

Respondent presented evidence of mitigating circumstances and of his rehabilitation before both the Hearing Committee and the Board. That evidence was summarized by the Board:

> In determining what was appropriate discipline, the Hearing Committee took into account mitigating circumstances including: (1) that Respondent's misconduct occurred during a time when he was suffering from alcoholism; (2) Respondent appears to be progressively recovering from alcoholism; (3) Respondent has paid back all clients and others all monies due them; (4) Respondent has retained an accountant who has set up a Safeguard accounting system which is adequate to preserve the integrity of Respondent's clients' escrow account, notwithstanding that Respondent does not implement the recommended system in all respects; and (5) his psychiatrist, several practicing attorneys who are friends of Respondent, and other practicing attorneys who are associated with Alcoholics Anonymous have agreed to monitor Respondent's practice.

Report and Recommendation of the Disciplinary Board, Majority Opinion at 12. Although both the Hearing Committee and the Board considered this evidence in determining what discipline was appropriate, both panels agreed that respondent's alcoholism did not excuse his conduct.

In recommending a two year suspension for respondent, the Board held that *Office of Disciplinary Counsel v. Knepp, supra* and *Office of Disciplinary Counsel v. Lewis, supra* were "determinative" in this case. Report and Recommendation of the Disciplinary Board, Majority Opinion at 12. Both of these cases involved factual situations similar to the present case, and both cases resulted in the

forgery, conversion of clients' funds, commingling of their funds with his own, and failure to maintain records of receipts and disbursements" could justify a finding that DR 1–102(A)(3) had been violated. Report and Recommendations of the Disciplinary Board, Majority Opinion at 12.

disbarment of the respondent attorneys.[6]   Disciplinary Counsel contends that it was inconsistent for the Board to cite these cases as controlling and at the same time fail to recommend disbarment.   Respondent contends that since the purpose of the disciplinary system is not to punish but to determine the continued fitness of an attorney to practice law, the two year suspension recommended by the Board is excessive.   Respondent contends that his restitution to his clients, his reformed conduct and the fact that all his misconduct was directly related to his alcoholism should reduce the sanctions imposed on him to public censure with supervised probation.

■   Respondent's argument has some merit.   However, it is totally dependent on the factual premise that his rehabilitation has progressed to the point that his continued practice of law is not likely to endanger the public.   Unfortunately, that premise is belied by two facts.   First, respondent persisted in his misrepresentations concerning his dealings with clients' funds after this investigation began. Most important, however, although he corrected these specific misrepresentations, he thereafter refused to provide Disciplinary Counsel with the list of clients which would have enabled Disciplinary Counsel to verify the accuracy of respondent's records and the truth of his statement that he had a sufficient escrow to cover all clients' funds.[7]

6.   While the *Knepp* and *Lewis* cases are similar to the present case, there are also factual differences which should be noted.   Both the *Knepp* and *Lewis* cases involved the commingling and conversion of clients' funds.   The *Knepp* case also involved neglect of legal matters and the charging of excessive legal fees.   The *Lewis* case involved the intentional failure to properly represent a client.   These latter violations are not present here.

7.   Respondent's counsel, at oral argument, attempted to take sole responsibility for this refusal and indicated his client was then willing to produce the necessary records.   We are not inclined to accept this excuse.   Respondent had admitted to acts which posed a serious risk of disbarment.   We do not see how he could have thought his effort to protect his practice by attempting to minimize the chance of his current clients learning of the existence of these proceedings, the reason counsel gave for advising refusal, was justified.   We must

■ While we thus hold that respondent's conduct warrants disbarment, and reject his contention that his affirmative defenses require us to impose only censure, we also reject the underlying thrust of Disciplinary Counsel's argument. This argument would not only make *Knepp, Lewis* and similar cases [8] controlling in the present case, but would create the equivalent of a *per se* rule requiring disbarment of any attorney who commingled or converted clients' funds or improperly shifted funds in escrow accounts, regardless of the other facts in the case. We decline to adopt such a rule. While we are mindful of the need for consistency in the results reached in disciplinary cases so that similar misconduct is not punished in radically different ways, we are also concerned that each case, subject as it is to our exclusive jurisdiction and *de novo* review, be decided on the totality of facts present. The position urged by Disciplinary Counsel would provide uniformity at the expense of the discretion and fact-specific considerations needed to fashion appropriate discipline. The gravity of any disciplinary proceeding requires not only the presentation of all relevant facts, but also our retention of the discretion necessary to evaluate those facts. Such discretion is incompatible with the *per se* rule urged by Disciplinary Counsel.

■ Finally, we consider respondent's argument that disbarment is an inappropriately harsh discipline because the purpose of the disciplinary system is non-punitive. Respondent cites *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975) and other cases [9] for this proposition. Respondent misconstrues these cases and the purpose of attorney discipline. *Campbell* and the other

agree with counsel that his advice to respondent was ill-advised. We note that no claim of client privilege was advanced.

**8.** Disciplinary Counsel cites *In re Leopold,* 469 Pa. 384, 366 A.2d 227 (1976) and a series of D & C cases as requiring disbarment "where even one instance of conversion is involved." Brief of Petitioner Disciplinary Counsel at 9.

**9.** *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871); *In re Oxman,* 496 Pa. 534, 437 A.2d 1169 (1981); *In re Berlant,* 458 Pa. 439, 328 A.2d 471 (1974).

cited cases stand for the proposition that punishment is not the *primary* function of the disciplinary system. Its primary function is rather to determine the fitness of an attorney to continue the practice of law. It thus serves to protect the courts and the public from unfit lawyers. This does not mean that the system does not possess a set of sanctions or that these sanctions are not punitive. The system is designed to determine whether misconduct has occurred and to what extent that misconduct indicates unfitness to practice law. Sanctions, admittedly punitive, are imposed in accord with the misconduct. Respondent's argument, taken to its logical conclusion, would preclude *any* sanction against an attorney found guilty of misconduct because that sanction would be punitive, *i.e.*, it would be a punishment for misconduct.[10] The disciplinary system could not fulfill its dual functions of determining fitness to practice and protecting the courts and the public if it could find an attorney to be so unfit that he should be suspended or disbarred and yet lack the power to effect the appropriate response. Sanctions are indeed not the end of the disciplinary system, but they are a necessary means to accomplish its end.

Despite respondent's admission of his wrongdoing to the Board, his conduct evidences serious acts of dishonesty involving misappropriation of clients' funds including commingling and conversion. His placing of the Camerons' signatures, without their permission, on a settlement which was materially different from the settlement he had told them he had reached involves not only unethical but also illegal conduct (*i.e.*, forgery). Finally, petitioner's misrepresentations to Disciplinary Counsel are in themselves unethical acts and evidence a lack of appreciation for the seriousness of his misconduct. This is especially evidenced by his initial refusal, even though on advice of counsel, to release his current clients names to Disciplinary Counsel because

**10.** Respondent apparently does not consider public censure with supervised probation "punitive", since that is the discipline he deems appropriate in his own case. Presumably suspensions and disbarment are improperly "punitive" under respondent's interpretation.

he did not wish them to know he was being investigated. Even considering respondent's ample evidence of reform in the recent past and his restitution to his clients, many of his acts of misconduct occurred well after his entry into Alcoholics Anonymous, and his restitution was delayed to an extent which clearly cost his clients interest on their funds.

Accordingly, we have disbarred Robert S. Lucarini from the practice of law in the Commonwealth of Pennsylvania.

ROBERTS, C.J., concurs in the result.

LARSEN, J., files a concurring opinion.

ZAPPALA, J., dissents.

LARSEN, Justice, concurring.

I concur in the result and would adopt a per se rule providing for disbarment when a lawyer steals a client's money. *Matter of Duffield,* 479 Pa. 471, 388 A.2d 1028 (1978) (Larsen, J., dissenting).