## In re Anonymous No. 58 D.B. 89

Disciplinary Board Docket no. 58 D.B. 89.

BROWN, *Member*, July 18, 1990—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On June 7, 1989, the Office of Disciplinary Counsel filed a petition for discipline which charged respondent with violating Disciplinary Rule 9-102(A) in the course of his representation of [A].

At the prehearing conference held on November 15, 1989, before Hearing Committee [    ], the parties entered into stipulations which stated that respondent's conduct had violated D.R. 9-102(A) and D.R. 1-102(A)(4) as alleged in the amended petition for discipline. As a consequence thereof, an order was issued authorizing petitioner to file an amended complaint which was duly filed on November 17, 1989.

On December 15, 1989, a hearing was held before Hearing Committee [    ], consisting of [    ].

On March 12, 1990, Hearing Committee [   ] filed a report and recommended that respondent be suspended from the practice of law for a period of one year for his admitted misconduct.

Petitioner filed a brief on exceptions to the report and recommendations of the hearing committee on March 28, 1990. Petitioner requested that respondent be suspended from the practice of law for a period of three to four years because of the serious nature of his misconduct.

The matter was adjudicated at the May 24, 1990 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The board adopts the stipulation of facts filed of record:

(1) Petitioner, whose principal office is situated at Commerce Building, 300 N. Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent was born in 1953 and was admitted to practice law in the Commonwealth of Pennsylvania in or about 1979. His office is located at [   ].

(3) Respondent stipulated to the authenticity of petitioner's exhibits P-1 through P-10, and waived objection to their introduction on grounds other than relevancy or accuracy of computations.

(4) On February 21, 1985, [A] sustained personal injuries when she slipped on a piece of wet cardboard placed near the exit door of [B] Store which was located at that time on [    ]. In March 1985, respondent was retained to represent [A] in her personal injury claim arising from the accident. (Pet. exh. 2, attending physician's report.)

(5) Respondent sent a letter dated March 22, 1985 to Dr. [C], [A's] treating physician, representing that all of his "medical charges" would be "paid from any monies [A] may receive from settlement or other funds." (Pet. exh. 1.)

(6) In March 1985 respondent notified the [D] Insurance Companies, which insured [B] Store, of his representation of [A]. (Pet. exh. 2.)

(7) Subsequently, respondent notified [D] of [A's] medical expenses resulting from the accident in the amount of $230 for treatment by Dr. [E] and $1,150 for treatment by Dr. [C]. (Pet. exh. 3.)

(8) Respondent negotiated a settlement of all outstanding claims, including medical bills, with the insurance company in the amount of $4,380.

(9) On or about September 16, 1985, [D] issued a check in the amount of $4,380 payable to "[A] and [Respondent], Esq." and mailed it to respondent. (Pet. exh. 4A.)

(10) Respondent and [A] endorsed the check and respondent deposited it into his "general office account no. [    ]." (Pet. exh. 4B.)

(11) In a letter dated October 9, 1985, respondent provided to [A] information which respondent stated was "a disposition and distribution of the funds." (Pet. exh. 5.)

(12) The "disposition and distribution" allocated costs and expenses as follows:

(a) $1,150 to Dr. [C];

(b) $230 to Dr. [E]; and

(c) $1,000 to respondent for his fee.

(13) Respondent subsequently failed to disburse the funds entrusted to him and owed to Drs. [C] and [E], totaling $1,380.

(14) Respondent failed to respond to telephone calls or letters from Dr. [C's] office requesting payment of his fee for services. (Pet. exh. 6.)

(15) In a letter of inquiry dated October 2, 1987, respondent was notified by petitioner of allegations of misconduct arising from the above-described conduct. (Pet. exh. 7.)

(16) Respondent acknowledged to petitioner his failure to disburse the medical expenses to the medical providers. (Pet. exh. 8.)

(17) Respondent acknowledged that he did not maintain an identifiable bank account for client funds only. (Pet. exh. 9.)

(18) On October 14, 1987, respondent made payment to the medical providers by issuance of cashier's checks payable to each of them.

(19) Respondent's bank records (Pet. exh. 10) reveal that on the dates indicated below, the account into which he deposited the settlement proceeds fell below the $1,380 entrusted to him:

| Period Out of Trust | Lowest Balance for Period |
| --- | --- |
| 10/04/85 to 10/08/85 | $902.04 |
| 10/15/85 to 10/31/85 | (7.65) |
| 11/27/85 to 12/02/85 | 25.08 |
| 12/24/85 to 12/31/85 | (100.23) |
| 01/06/86 to 01/10/86 | 557.27 |
| 01/14/86 to 01/21/86 | 458.75 |
| 01/29/86 to 01/31/86 | 522.09 |
| 03/13/86 to 03/17/86 | 64.59 |
| 04/25/86 to 05/08/86 | 165.07 |
| 06/06/86 to 06/12/86 | 244.50 |
| 06/19/86 to 06/20/86 | 811.00 |

| | |
|---|---|
| 06/24/86 to 06/24/86 | 1198.00 |
| 09/05/86 to 09/10/86 | 743.19 |
| 09/24/86 to 09/30/86 | 806.67 |
| 12/01/86 to 12/01/86 | 422.94 |
| 12/18/86 to 12/18/86 | 880.17 |
| 12/30/86 to 12/30/86 | 1181.00 |
| 01/23/87 to 01/28/87 | 58.17 |
| 02/17/87 to 02/20/87 | 78.17 |
| 03/03/87 to 03/06/87 | 384.02 |
| 03/13/87 to 03/25/87 | 1223.04 |
| 04/24/87 to 05/01/87 | 10.04 |
| 06/10/87 to 06/10/87 | 904.57 |
| 08/12/87 to 08/12/87 | 927.11 |
| 08/20/87 to 08/21/87 | 834.73 |
| 09/15/87 to 09/17/87 | 913.04 |
| 10/07/87 to 10/15/87 | 355.66 |

(20) Respondent's conduct is a clear violation of Disciplinary Rule 9-102(A), which requires that all funds of clients paid to any attorney, except advances for costs and expenses, be kept in identifiable accounts in the state in which the attorney's office is located and that no funds belonging to the attorney shall be deposited therein except for funds sufficient to pay bank charges and funds belonging in part to the client and in part to the attorney.

(21) During the period September 1985 through October 1987, respondent maintained [ ] Bank account no. [ ] into which he deposited client funds and personal funds.

(22) During the relevant period respondent received and deposited into the account client trust funds including, inter alia, client funds belonging to [A], [G], [H] and [I], and [J] and [K].

(23) As of October 8, 1985, respondent was entrusted with $1,100 belonging to [A] and $1,380 belonging to [A's] assignees, for a total of $2,480.

(24) On October 9, 1985 check no. 188, payable to [G] in the amount of $1,417, cleared respondent's account for "final settlement disbursement."

(25) On October 8, 1985, the account balance was $2,933.47, less than the $3,897 entrusted to him by [A] ($2,480) and [G] ($1,417).

(26) On October 9, 1985 respondent disbursed $1,100 to [A], leaving him entrusted with $1,380 for her assignees.

(27) On October 30, 1985 the account was overdrawn by $7.65 after a cash withdrawal of $40.

(28) On December 16, 1985 respondent deposited $16,500 into the account with a deposit slip annotated "[H] and [L]."

(29) On January 14, 1986 check no. 1963, payable to [H] and [I] in the amount of $6,000 for "escrow advance" cleared the account.

(30) On February 7, 1986, check no. 1997 payable to [H] and [I], in the amount of $2,337.50 for "final settlement" cleared the office account.

(31) As of December 31, 1985, after a cash withdrawal of $120, the account was overdrawn in the amount of $100.23, less than the $9,717.50 entrusted to him by [A] ($1,380) and [H] and [I] ($8,337.50).

(32) On January 21, 1986 respondent deposited $3,000 into the account with a deposit slip bearing the annotation "[J]."

(33) On January 24, 1986, check no. 115 payable to [K] in the amount of $1,000 for "advance" cleared the account.

(34) On February 6, 1986 check no. 1995 payable to [J] and [K] in the amount of $1,450 for "settlement funds" cleared the account.

(35) As of January 31, 1986 the account balance was $522.09, less than the $5,167.50 entrusted to him by [A] ($1,380), [H] and [I] ($2,337.50) and [J] and [K] ($1,450).

(36) By February 7, 1986 the funds owed to the [H and I] and the [J and K] were paid by respondent.

(37) Despite the fact that he has been in private practice since 1982, respondent did not open an escrow account for the proper deposit of funds entrusted to him by clients until October 1987. (N.T. 14.)

(38) By letter dated November 1, 1989, petitioner requested that respondent produce at the December 15 hearing records of his escrow account. (N.T. 33-34.)

(39) Respondent did not provide those records. (N.T. 31.)

(40) Respondent's violations of the charged Disciplinary Rules were not caused by mental impairment, substance addiction or gambling addiction.

(41) In 1988 respondent was offered an opportunity by Chief Disciplinary Counsel to consult with an attorney to assist him in his practice procedures, but he failed to take advantage of that opportunity. (N.T. 28.)

(42) Respondent has a substantial record of discipline, including a private reprimand for two matters (which included use of perjured testimony or false evidence and dishonest conduct) and three informal admonitions (which included neglect, intentional failure to carry out a contract or employment and failure to refund unearned portions of fees). (Pet. Exh. 11 to 14.)

(43) By his conduct, respondent has violated D.R. 1-102(A)(4) and D.R. 9-102(A) as charged in charge I and he has violated D.R. 1-102(A)(4) and D.R. 9-102(A) as charged in charge II.

## CONCLUSIONS OF LAW

(1) Respondent's conduct constitutes violations of D.R. 9-102(A) and D.R. 1-102(A)(4).

## DISCUSSION

Respondent concedes that his conduct as alleged violated D.R. 9-102(A) and D.R. 1-102(A)(4). Therefore, the only question before the Disciplinary Board is the proper sanction to be imposed in this matter.

It must be noted from the outset that the purpose of imposing discipline in any case is the protection of the public, and the maintenance of the integrity of the bar and the judicial system. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

Respondent has admitted to the commingling and conversion of client funds; a degree of misconduct serious enough to warrant the imposition of a severe disciplinary sanction. It is incumbent upon the Disciplinary Board to fashion and recommend an appropriate measure of discipline in light of respondent's conduct and prior disciplinary record, as:

"[W]e are mindful of the need for consistency in the results reached in disciplinary cases so that similar misconduct is not punished in radically different ways, we are also concerned that each case . . . be decided on the totality of facts present." *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983).

The Office of Disciplinary Counsel cited in its brief numerous commingling and conversion cases, both within and outside the Commonwealth's jurisdiction, in which the respondent received widely varying disciplinary sanctions, ranging from disbarment to a three-month suspension. (Petitioner's

brief on exceptions at 10-24.) The critical factors in each of these cases involves consideration of both respondent's background and the actions and circumstances related to the commingling and/or conversion.

In the instant case, although respondent's commingling and conversion of client funds occurred over a period of two years, considering the number of occasions in which his account was not out of trust, it appears that inadequate and/or improper office administration was a significant factor in respondent's dereliction. Indeed, at the December 15, 1989 hearing on the matter, respondent characterized himself as a poor administrator who first opened an escrow account in 1987. (N.T. 16-17.) Although a lack of administrative skill does not excuse respondent's misconduct, it is a factor to be considered on the issue of sanctions.

It is also important to note that respondent paid all of his clients and their creditors in full prior to the initiation of disciplinary proceedings. With the exception of his failure to provide the hearing committee with his updated financial statements as promised, respondent substantially cooperated with the Office of Disciplinary Counsel after the commencement of disciplinary proceedings.

Respondent's disciplinary record is not unblemished and, therefore, must be considered when determining the appropriate discipline in this matter. Respondent's past disciplinary history includes a private reprimand and three informal admonitions administered in 1987 and 1989. (Pet. exh. 11-14.) Although respondent's prior misconduct did not rise to the level requiring public discipline, it evinces a disturbing pattern of misconduct.

In light of respondent's prior disciplinary history, his acknowledged need for a "break" from the

practice of law (N.T. 18), and the serious nature of his infractions, we conclude that respondent's misconduct warrants suspension from the practice of law in order to protect the interests of the public and the integrity of the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania concurs with the sanctions urged by the Office of Disciplinary Counsel and respectfully recommends that respondent be suspended from the practice of law for a period of three years. Costs are to be paid by respondent.

Ms. Heh did not participate in the adjudication.

## ORDER

And now, September 10, 1990, upon consideration of the report and recommendations of the Disciplinary Board dated July 18, 1990, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of three years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.