JUSTICE BAER, Concurring Without hesitation, the majority imposes the most severe sanction of disbarment, concluding that “[tjhere are few transgressions which more seriously undermine the public’s confidence and trust in the integrity of their judicial system, and which are as offensive to the high standards and principles which other members of the bench and bar strive so faithfully to uphold in the performance of their duties, than those committed by [Respondent, Former Judge Paul Michael Pozonsky].” Op. at 846. While I in no way condone the actions of Respondent, who founded and supervised Washington County’s Drug Court and subsequently stole cocaine from the courtroom’s evidence locker for his personal use, I find this disciplinary case much more challenging to resolve. My difficulty lies in Respondent’s decision not to present mitigation .evidence in the form of a mental health expert to establish the causal connection between what I perceive to be his drug addiction and his misconduct. See Office of Disciplinary Counsel v. Braun, 520 Pa. 157, 553 A.2d 894, 895-96 (1989) (requiring evidence of a causal connection between the psychiatric disorder and the attorney’s misconduct to establish mental health mitigation evidence in a disciplinary case). As-a result of this omission, neither the lower tribunals nor the majority opinion considered Respondent’s cocaine addiction as a mitigating factor. Interpretation of the governing precedent of this Court compels me to join the majority’s conclusion that to prove legally cognizable mental health mitigation evidence in a disciplinary case, a respondent must present a mental health expert to establish the causal link between the attorney’s mental disability and his misconduct. Considering,' as I believe I must, this evidentiary vacuum, I am constrained to agree with the majority that the delicate weighing of Respondent’s transgressions against the other substantial evidence of mitigation, tips'the' scalds towards imposition of the sanction of disbarment. Initially, I find it imperative to dispel any notion that there is a per- se rule requiring disbarment when a judicial officer is convicted of a crime. See Report and Recommendation of the Disciplinary Board, 12/21/2016, at 11 (stating that “[p]rior similar cases support, the conclusion that. criminal conduct by a judicial officer warrants .disbarment”). Instead,- it is well-settled that because this Court imposes attorney discipline on a case-by-case basis, we must consider the totality of the facts presented, including both aggravating and mitigating factors, Office of Disciplinary Counsel v. Quigley, 161 A.3d 800, 807 (Pa. 2017), rather than dispensing disciplinary sanctions by per se rule. An attorney’s position as an elected judicial officer does not alter this Court’s individual assessment of all circumstances surrounding the attorney’s criminal conviction. ‘Moreover, application of a per se disbarment rule would eliminate the critical -inquiry of whether the criminal conviction renders the particular judicial officer unfit to practice law. See Office of Disciplinary Counsel v. Cappuccio, 616 Pa. 439, 48 A.3d 1231, 1238-39 (2012) (holding that “the primary function of the attorney disciplinary system is not punitive in nature, but is to determine the fitness of an attorney to continue the practice of law and maintain the integrity of the legal system[;]” the objective is to protect the public and the courts from attorneys who are unfit to practice law). Accordingly, while this Court strives for consistency in disciplinary sanctions so that sanctions for similar misconduct are not imposed in “radically different ways,” Office of Disciplinary Counsel v. Preski, 635 Pa. 220, 134 A.3d 1027, 1031 (2016) (citing Office of Disciplinary Counsel v. Lucarini, 504 Pa. 271, 472 A.2d 186, 190 (1983)), disciplinary cases are fact-intensive and each case, regardless of the nature of the position held by the attorney, must be examined independently with consideration being given- to the misconduct and the unique aggravating and mitigating factors. That being said, I agree that an attorney’s position as a public officer serves as an aggravating, but not dispositive, factor in a disciplinary matter. See Office of Disciplinary Counsel v. Cappuccio, 48 A.3d at 1240 (holding that “the fact that a lawyer holds a public office, or serves in a public capacity, as- here, is a factor that properly may be viewed as aggravating the misconduct in an attorney disciplinary matter”); In re Melograne, 585 Pa. 357, 888 A.2d 753, 756 (2005) (holding that “the judge’s role is so intimate a part of the process of justice that misbehavior as a judge must inevitably reflect upon -qualification for membership at the bar”). Consistent with this jurisprudence, I agree with the majority’s determination that Respondent’s criminal conduct is aggravated by the fact that he was serving as a common pleas court judge when the illegal acts took place. In addition, Respondent’s commission of the criminal conduct while serving as a member of the judiciary undoubtedly established a serious-violation of the public trust as he was sitting in judgment of individuals wlio were committing drug offenses, while he, himself, was engaging in similar conduct. This specific criminal behavior would warrant the most severe sanction of disbarment in the absence of significant mitigation evidence. It cannot be ignored, however, that Respondent presented extensive evidence of mitigation including his current recovery from his cocaine addiction and the detailed efforts he has made to rebuild his life, including the performance of community service for organizations such as the Washington-City Mission (a homeless shelter), the Sunlight Club (a recovery house that hosts drug and alcohol meetings), the Washington County Drug and Alcohol Commission, and Zero Six Eight (an organization assisting former- convicts in starting new businesses). Further, Respondent submitted sixty-eight character witness letters from family members, friends, and pastors; individuals who had worked with him such as former law clerks, secretaries, and court administrators; individuals who had practiced before him including assistant district attorneys, members of law enforcement, and private attorneys; and individuals- who had completed successfully the drug treatment court program that Respondent had administered. See Respondent’s Exhibits 1-69. These letters established ■ that Respondent had served the people of his district with distinction both as a-magisterial district judge and a common pleas court judge, highlighting his administration of the first drug court program in Washington County. Rer spondent further submitted evidence establishing that none of his criminal behavior affected the -outcome of any case. See. Respondent’s Exhibits 73 and 74. Considering this evidentiary record, I find it ironic that the therapeutic justice that Respondent dispensed to the numerous drug-addicted criminal defendants that came before him, many of whom he led to the path of recovery, is not so readily available to him in this disciplinary matter, particularly considering that his misconduct involved the theft of the very drug to which he was addicted. Respondent’s failure to present the requisite expert testimony establishing the causal connection between his addiction and criminal conduct may have arisen from an inability to comprehend the gravity of his disability, as occurs with many individuals struggling with addiction. For example, when asked directly at the disciplinary hearing whether he was addicted to cocaine at the time he began taking the drugs from the evidence locker, Respondent stated, “I didn’t think I was.” Notes of Testimony, 3/15/2016, at 53. Contrary to the majority’s interpretation of this statement as a “straightforward disavowal that addiction was the motivating factor which caused him to begin stealing the cocaine,” Majority Opinion at 846, when examined in the context of Respondent’s testimony as a whole, as well as the evidence of his subsequent treatment and recovery from addiction, I find that this statement merely reflects that Respondent did not realize he had an addiction problem when his misconduct began. I view as more probative than Respondent’s clouded personal assessment, the testimonials of those people closest to him, who.observed the obvious nexus- between Respondent’s cocaine dependency, and his theft of the cocaine. See e.g. Respondent’s Exhibit 5 (statement of Shawn M. Stevenson, Esquire, opining that “the crimes [Respondent] committed are a direct result of this disease of addiction”); Respondent’s Exhibit 7 (statement of Joseph H. Fox, Esquire, indicating that “[w]e know that addiction crosses all age,.gender and socioeconomic lines and Judge Pozonsky simply fell victim to a condition which he was, at the time, unable .to control”); Respondent’s Exhibit 33 (statement of Victor M, DiBattista, Esquire, opining that Respondent’s - criminal behavior was “completely out of character” and that Respondent had “succumbed to the same evil from which he sought to protect others”); Respondent’s Exhibit 34 (statement of family friend, Michael E. DeSimone, indicating that Respondent’s criminal behavior was out of character and resulted from his addiction); Respondent’s Exhibit 38 (statement of Bob Brady, Esquire, indicating that Respondent’s addiction was an illness, not a behavior born in criminality, which led to his misconduct); Respondent’s Exhibit 41 (statement of friend,. David Valli-na, indicating that Respondent’s criminal conduct was “a direct result of a disease, a sickness, from which he is currently recuperating”); Respondent's Exhibit 48 (statement of friends, David and Mona Ma-talik, indicating that “[i]t is unfortunate that [Respondent’s] personal troubles with addiction led to the termination of the good he was doing for others”); and Respondent’s Exhibit 58 (statement of Kenneth J. Horoho, Jr., Esquire, indicating that Respondent’s criminal behavior was an aberration caused by an addiction that Respondent has proactively addressed and corrected). - Indeed, Respondent presented medical evidence- of his addiction through a progress report prepared by licensed professional counselor Deborah E. Stamm, who had ■ treated Respondent after the criminal acts had been committed. See Respondent’s Exhibit 72 (indicating a general diagnosis that Respondent had a cocaine dependency that was in sustained partial remission). In my view, this testimony came just shy of satisfying the Braun' standard as it established Respondent’s cocaine addiction and the misconduct at issue involved the theft of that particular drug. Neither Counselor Stamm, nor the other two counselors who treated Respondent for his addiction and submitted correspondence on his behalf, however, rendered the medical conclusion that Respondent’s addiction caused his criminal behavior. Accordingly, notwithstanding the probative nature of the various testimonials in support of Respondent, after much thought, as stated, I must agree with the majority that mental health expert testimony'is necessary to establish the requisite causal connection between Respondent’s mental disability of addiction and his transgressions. If we were to hold otherwise, our. disciplinary system could be compromised by the myriad of distinct and novel scenarios, which attornéys could parade, without medical foundation, as mental health mitigation evidence to mitigate the severity of their disciplinary violations. In summary, I conclude that, through his own misconduct, Respondent has lost everything he once had. Had persuasive Braun evidence been presented linking his cocaine addiction to his misdeeds, perhaps the lower tribunals or even the majority would have opted for the maximum suspension of five years, rather than disbarment. Personally, I believe that Respondent’s ultimate triumph over his addiction and his contributions to the Drug Court and to the various community organizations he served are worthy of something. However, that value does not tip the scale away from imposition of disbarment, absent appropriate Braun evidence. Justice Donohue joins this concurring opinion.